# In re C-W-L-, Respondent

*Decided October 31, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien who is subject to a final order of removal is barred by both statute and regulation from filing an untimely motion to reopen removal proceedings to submit a successive asylum application under section 208(a)(2)(D) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a)(2)(D) (2000), based on changed personal circumstances.

FOR RESPONDENT: Theodore N. Cox, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Evalyn Douchy, Assistant Chief Counsel

BEFORE: Board Panel: HURWITZ, Acting Vice Chairman; GRANT and HESS, Board Members.

HURWITZ, Acting Vice Chairman:

This case is before us on remand from the United States Court of Appeals for the Second Circuit pursuant to a February 4, 2006, Stipulation and Order for Dismissal. Based on the parties' stipulated remand order, the court vacated our March 8, 2005, decision denying as untimely the respondent's December 28, 2004, motion to reopen our decision of March 6, 2003.[1] This remand provides an opportunity to address "whether the [respondent], as an alien with a final order of removal, may file a successive asylum application under [section 208(a)(2)(D) of the Immigration and Nationality Act,] 8 U.S.C. § 1158(a)(2)(D) based on changed personal circumstances." Both parties have filed briefs on remand. The motion will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a male native and citizen of China who entered the United States without a valid entry document in February 1990. He was issued a Notice to Appear (Form I-862) on June 16, 1997. The respondent was married

---

[1] We construed the respondent's "Motion to File Successive Asylum Application" as a motion to reopen.

in June 1998 to a lawful permanent resident alien of the United States. The couple has three United States citizen daughters born July 21, 1999, November 29, 2000, and November 30, 2003.

On March 21, 2001, an Immigration Judge denied the respondent's application for asylum and withholding of removal based on his fear of persecution on account of (1) his past interactions with birth control officials[2] and (2) the birth of his two children in the United States. We affirmed the Immigration Judge's decision on March 6, 2003. On December 20, 2004, the respondent filed a "Motion to File Successive Asylum Application Pursuant to 8 C.F.R. § 208.4," arguing that because of the birth of his third child in the United States, he could show a well-founded fear of persecution, i.e., involuntary sterilization, in China on account of his opposition to coercive population control policies.

In his motion, the respondent specifically argued that he need not file a motion to reopen in order to submit his successive asylum application for our consideration, and that none of the typical time and numerical limitations on such motions applied to him. We denied this motion as untimely on March 8, 2005, and noted that none of the exceptions to the timeliness requirements for motions to reopen applied. Specifically, we noted that the untimeliness of the motion to reopen was not excused by "changed circumstances arising in the country of nationality." Section 240(c)(7)(C)(ii) of the Act, 8 U.S.C. § 1129a(c)(7)(C)(ii) (2000); *see also* 8 C.F.R. § 1003.2(c) (2005). The respondent appealed this decision to the Second Circuit, which issued the above-noted remand order.

The respondent's argument is premised on the assertion that section 208(a)(2)(D) of the Act, 8 U.S.C. § 1158(a)(2)(D) (2000), standing alone, is a basis for filing an additional asylum application, notwithstanding the fact that he is currently under an order of removal and is barred by section 240(c)(7)(C)(ii) from filing an additional asylum application, except where accompanied by a timely motion to reopen or justified by changed country conditions. Because the Act's various provisions on when, where, and how to file an asylum application cannot be read in harmony to permit the respondent's interpretation, we must reject his argument and deny his motion.

---

[2] We note that the respondent's claimed past interactions with birth control officials were on behalf of his aunt, who was allegedly forced to submit to an involuntary abortion. The Immigration Judge found that the respondent's testimony as to his past scuffles with birth control officials was not credible. We affirmed this finding, which was not the subject of any appeal. There is accordingly no claim of past persecution at issue in this case.

## II. ANALYSIS

On remand, we must consider the relationship between sections 208(a)(2)(D) and 240(c)(7)(C)(ii) of the Act and the corresponding regulations that implement those sections of the statute. Our interpretation of the Act is governed by settled principles of statutory construction. Generally, as a first step, we must look to the actual language used in the statute. It is well settled that the "'starting point must be the language employed by Congress'" and that we must assume "'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (*quoting American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Ruiz-Romero*, 22 I&N Dec. 486 (BIA 1999). To resolve the question before us, we must therefore look to the language and design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). In so doing, we must give effect, if possible, to all parts of a statute. *Kungys v. United States*, 485 U.S. 759 (1988).

We also are bound by the implementing regulations that correspond to the relevant portions of the statute that control the issue presented here. *Matter of Ponce de Leon*, 21 I&N Dec. 154, 158 (BIA 1996; A.G., BIA 1997). These regulations have the force of law. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954). Regulations, like statutes, must be interpreted to give effect to the entire regulatory scheme. *See Matter of Villarreal-Zuniga*, 23 I&N Dec. 886, 889 (BIA 2006). In this context, we note that the purpose of the regulations, like statutory provisions, is evidenced by the words chosen by the Attorney General. *See Matter of Artigas*, 23 I&N Dec. 99, 100 (BIA 2001). "This Board and the Immigration Judges 'must give effect to the unambiguously expressed intent' of the Attorney General." *Id.* (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)). If the statute is silent or ambiguous with respect to the specific issue addressed by the regulation, the question becomes whether the agency regulation is a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 843. An agency's interpretation of its own regulations is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945).

We turn now to the statutory provisions that control this case, namely sections 208(a)(2)(D) and 240(c)(7)(C)(ii) of the Act. The authority for an

alien to file an asylum claim lies in section 208(a) of the Act.[3]   As the respondent acknowledges, the Act provides that an alien may file only one claim for asylum, which must be filed within 1 year of his or her arrival in the United States.  *See* sections 208(a)(2)(B)-(C) of the Act.[4]  Exceptions to this general rule state that the 1-year filing deadline and the prohibition on refiling after the denial of an asylum application do not apply "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified." Section 208(a)(2)(D) of the Act. The regulations provide a noninclusive list of examples of changed circumstances for purposes of section 208(a)(2)(D).  *See* 8 C.F.R. § 1208.4(a)(4)(i) (2007).[5]

Section 240(c)(7)(C)(ii) of the Act was originally enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA").  This legislation was intended, in part, to curb abuse of the asylum process and other parts of removal proceedings.[6]  Section 240(c)(7) applies to situations like the one at bar, where an alien seeks to reopen proceedings in which he previously was ordered removed from the United States.  It provides that "[a]n alien may file

---

[3]  The regulations implementing the Act provide that an asylum application may be filed affirmatively or defensively.  8 C.F.R. § 1208.4(b) (2007).  An affirmative application is filed with the Department of Homeland Security prior to the initiation of removal proceedings, whereas a defensive application is filed after the initiation of proceedings.

[4]  Specifically, the Act notes that the general rule permitting an alien to file an asylum application does not apply if the alien did not file the application "within 1 year after the date of the alien's arrival in the United States," or if the alien "has previously applied for asylum and had such application denied."  Sections 208(a)(2)(B)-(C) of the Act.

[5]  These examples include changed country conditions, changes in the applicant's circumstances that materially affect his or her eligibility for asylum, changes in United States law, or activities that the applicant becomes involved in outside the country of feared persecution.  8 C.F.R. §§ 1208.4(a)(4)(i)(A)-(B).

[6]  We have observed that in revamping the immigration statutes, including provisions regarding asylum, Congress intended to curb the practice by which "aliens extended their stays in this country to accrue time to gain immigration benefits."  *See Matter of Mendoza-Sandino*, 22 I&N Dec. 1236, 1243 (BIA 2000) (observing that conferees on the IIRIRA noted that various forms of relief available under the immigration laws were "exploited" by aliens seeking to extend their time in the United States); *see also Wang v. Board of Immigration Appeals*, 437 F.3d 270, 274 (2d Cir. 2006) (noting the "iron[y]" of a situation where aliens illegally in the United States "were permitted to have a second and third bite at the apple" by claiming fear of persecution in China on account of the birth of United States citizen children).

only one motion to reopen proceedings under this section," except for motions to reopen relating to battered spouses, children, and parents. Section 240(c)(7)(A) of the Act. The motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal. *See* section 240(c)(7)(C) of the Act. With regard to asylum applications, neither the 90-day motion filing deadline nor any other time limit applies when the purpose of the motion to reopen is to make an asylum claim "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." Section 240(c)(7)(C)(ii) of the Act.

The regulations generally track and provide guidance on implementing the statutory language of both sections 208(a)(2)(D) and 240(c)(7)(C)(ii) of the Act. For example, with regard to asylum claims, the regulations confer jurisdiction over an asylum claim on the Immigration Court or the Board, depending upon the stage of the proceedings. An asylum application filed "[d]uring exclusion, deportation, or removal proceedings" may be filed with the "Immigration Court having jurisdiction over the underlying proceeding." 8 C.F.R. § 1208.4(b)(3)(i). However, "[a]fter completion of exclusion, deportation, or removal proceedings" the regulations make clear that an asylum application may only be filed with the Immigration Court in conjunction with a "motion to reopen pursuant to 8 CFR part 1003 where applicable." 8 C.F.R. § 1208.4(b)(3)(ii). Specifically, the regulations provide that to request further relief, a motion to reopen must be filed with the last body that issued an administratively final order of removal. 8 C.F.R. § 1003.2 (setting forth provisions allowing the Board to reopen proceedings); 8 C.F.R. § 1003.23(b)(1) (2007) (prohibiting reopening by an Immigration Judge where jurisdiction is vested with the Board). The regulations expressly provide that the time and numerical limitations on motions to reopen will not bar asylum or withholding of removal applications where the application is based on changed country conditions. 8 C.F.R. §§1003.2(c)(3)(ii), 1003.23(b)(4)(i).

The respondent moved to file a new asylum application with the Board based on the birth of his third child some 21 months after the entry of a final administrative order of removal. Yet he filed no motion to reopen proceedings, a prerequisite to our taking up any issue arising in his case, given the entry of the removal order against him. The plain terms of the statute and regulations set forth above do not permit us to consider the "successive" asylum application, because it is not based on "changed country conditions," as required by section 240(c)(7)(C)(ii) of the Act. Section 208(a)(2)(D), on which the respondent relies for his premise that changes in *personal* circumstances justify the new asylum application, simply does not apply to a situation where an asylum applicant has already been ordered removed.

*Accord Chen v. Gonzales*, 498 F.3d 758 (7th Cir. 2007). The respondent's motion, insofar as it can be construed as a motion to reopen, is untimely, and the late motion is not supported by changed country conditions. *See Zheng v. U. S. Dep't of Justice*, 416 F.3d 129, 130 (2d Cir. 2005). Moreover, even if the respondent might later argue that the Immigration Court is a proper tribunal to first adjudicate a motion to file a successive asylum application,[7] the regulations require that *all* asylum applications filed with the Immigration Court after the close of removal, deportation, or exclusion proceedings be accompanied by a properly filed motion to reopen. 8 C.F.R. § 1208.4(b)(3)(ii).

To hold that section 208(a)(2)(D) of the Act is an independent basis for filing an asylum application at any time, including when a final order of removal is in place, would render section 240(c)(7)(C)(ii) (and 8 C.F.R. § 1003.2(c)(3)(ii)) superfluous and would negate the effect of regulations granting jurisdiction to this Board and the Immigration Courts. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). It would be highly unlikely that Congress would have intended to provide an alien under a final order of removal with a avenue for relief–such as a successive asylum claim based solely on a change in personal circumstances–but no procedural basis for its exercise. The only way for us to acquire jurisdiction over a petition for further relief (such as a "successive asylum application") is through a properly filed motion to reconsider or reopen.[8] Such a motion would, of course, only be cognizable if we were the last body to enter or affirm the final administrative decision ordering removal. *See* 8 C.F.R. § 1003.2(a) (requiring a party to file a written motion to reopen "any case in which a decision has been made by the Board"); *see also Matter of Susma*, 22 I&N Dec. 947 (BIA 1999); *Matter of Mladineo*, 14 I&N Dec. 591 (BIA 1974). Similarly, if the Immigration Court had been the last tribunal to enter or affirm an order of removal, it would not have jurisdiction under the Act to entertain the respondent's successive asylum application without a motion to reopen. 8 C.F.R. § 1208.4(b)(3).

We are not persuaded by the respondent's resort to regulatory history to support his interpretation of the statute. In his brief, the respondent indicates that the Department of Justice's initial proposed rule implementing section 208(a)(2) of the Act (imposing the 1-year deadline and a numerical limit on asylum applications), expressly stated that "[c]hanged circumstances arising after the denial of the application . . . shall only be considered as part of a motion to reopen." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 444, 463 (proposed Jan. 3, 1997) (to have been

---

[7] *Cf. Chen v. Bureau of Citizenship and Immigration Servs.*, 203 Fed. Appx. 403, 405 (2d Cir. 2006).

[8] The circumstances permitting an alien to file a motion to reconsider are not present here.

codified at 8 C.F.R. § 208.4(a)(2)(i)). The interim rule adopted after the notice and comment period eliminated the express requirement of a motion to reopen, a change that, the respondent argues, means that a motion to reopen is *never* required to accompany any new asylum application filed because of changed personal circumstances. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997).[9]

We must disagree with the respondent's interpretation, as it conflicts with the plain terms of the statute and regulations. "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371 (1988). The cited regulatory history nowhere states that an alien may file unlimited "successive asylum applications" after the entry of a final administrative order of removal without filing a motion to reopen. At best, the cited regulatory provisions implementing section 208(a)(2)(D) of the Act are silent on the issue of reopening, most likely because the requirement of an accompanying motion to reopen once a final order of removal has been entered is clearly set forth in other parts of the statutory and regulatory scheme. We cannot read into the regulatory history a jurisdictional grant that conflicts with the clear terms of the statute and regulations. There is another preferable explanation for the Department's rulemaking history described above that does not nullify the statutory language governing motions to reopen removal proceedings. Simply, the language at section 208(a)(2)(D) and 8 C.F.R. § 1208.4 that permits an updated or successive asylum application based on

---

[9] In comments explaining the change, the Department stated the following:

> Regarding the changed circumstances exception in section 208(a)(2)(D) [of the Act], the Department has . . . decided to provide a better definition of this exception by indicating that the definition may include either changed conditions in the home country or changes in objective circumstances relating to the applicant in the United States, including changes in applicable U.S. law, that create a reasonable possibility that the applicant may qualify for asylum. Because of inconsistency between the formulation of changed circumstances in section 208(a)(2)(D) and the formulation in section 240(c)(5)(ii) of the Act, which permits an alien to file a motion to reopen beyond the time limit normally applicable to such a motion, the Department has decided to drop the requirement that, for purposes of the prohibition in section 208(a)(2)C) [sic], such exception may only be raised through a motion to reopen.

62 Fed. Reg. at 10,316.

changed personal circumstances *applies in conjunction with* section 240(c)(7)(C) and 8 C.F.R. §§ 1003.2(c) and 1003.23(b) to permit such an application at any time during proceedings before the entry of a final order of removal or within the 90-day deadline for a motion to reopen. Outside of those circumstances, changed country conditions must be shown.

This interpretation is in line with the Department's contemporaneous comments accompanying the interim rule implementing IIRIRA–the same interim rule cited by the respondent. In fact, as to the proposed regulations,[10] a commenter "suggested that the time and numerical limitations for motions to reopen should be broader than changed country conditions." 62 Fed. Reg. at 10,321. In response, as noted above, the Department noted that it had decided to "drop the requirement that the changed circumstances exception to the one year filing deadline in section 208(a)(2) of the Act be raised only through a motion to reopen" and concluded that "the standard for reopening an asylum case provided in 8 C.F.R. § 3.23(b)(4) is entirely consistent with the asylum reopening standard provided in IIRIRA." *Id.* This commentary makes clear that the statutory bars that are exempted by sections 208(a)(2)(D) are separate from, and apply principally at an earlier stage of proceedings than, the 90-day reopening provisions in both the statute and regulations. *Matter of G-C-L-*, 23 I&N Dec. 359 (BIA 2002) (withdrawing from our previous policy set forth in *Matter of X-G-W-*, 22 I&N Dec. 71 (BIA 1998), of granting untimely motions to reopen by applicants claiming eligibility for asylum based solely on coercive populations control policies after the Act was amended to classify certain victims of such policies as refugees). The reopening restrictions are best viewed as additional limitations on the ability of aliens to use either asylum or withholding claims as a means of reopening final orders of exclusion, deportation, or removal.

As a whole, published Federal court decisions that have squarely addressed the issue appear to defer to our decision to deny so-called "motions to file successive asylum applications," although some courts have, in dicta, left open the question whether changed personal circumstances could be a sufficient reason to allow an alien to file successive asylum applications after a final order of removal. *Compare Chen v. Gonzales*, *supra*, at 760, *Wang v. Board of Immigration Appeals*, 437 F.3d 270, 274 (2d Cir. 2006), *and Zhao v. Gonzales*, 440 F.3d 405, 407 (7th Cir. 2005), *with He v. Gonzales*, 2007 WL 2472546, at *4, n.9 (9th Cir. Sept. 4, 2007), *Chen v. Gonzales*, 490 F.3d 180, 184 (2d Cir. 2007), *Haddad v. Gonzales*, 437 F.3d 515, 518-19 (6th Cir. 2006), *and Guan v. Board of Immigration Appeals*, 345 F.3d 47, 49 (2d Cir. 2003). The latter cited cases, considering the possibility that successive

---

[10] The relevant sections of the regulations were renumbered after publication of the interim rule and are now at 8 C.F. R. §§ 1003.2(c) and 1003.23(b).

asylum applications are allowed under relevant statutes and regulations, do not address the basis for the Board's jurisdiction–or that of the Immigration Court–to consider a successive asylum application in proceedings that are administratively final when the standards for reopening are not met, nor the basis for a statutory interpretation that would permit disregard of section 240(c)(7)(C) of the Act and its implementing regulations.

## III. CONCLUSION

We conclude that the respondent's successive asylum application cannot be considered by us, except as part of a timely and properly filed motion to reopen or one that claims that the late motion is excused because of changed country conditions.  Neither the Board nor the Immigration Judge has jurisdiction to consider a new asylum claim in proceedings that are administratively final and where the standards for reopening are not satisfied. Accordingly, the respondent's "Motion to File Successive Asylum Application" must be denied.  To the extent that the respondent intends a motion to reopen for the purpose of filing a successive asylum application, that motion will also be denied as untimely and not supported by "changed country conditions arising in the country of nationality or the country to which removal has been ordered."  Section 240(c)(7)(C)(ii) of the Act.

Finally, although the respondent argues that a remand is appropriate because his wife's petition for an alien relative has been approved, he would have to move to reopen proceedings before we can consider any application for relief on this basis, since he is currently under a final order of removal.  As discussed above, such a motion to reopen would be untimely.  Furthermore, without evidence of a currently available visa, the respondent has not shown that he is eligible for any relief from removal based on approval of a petition for an alien relative visa filed on his behalf.  Consequently, reopening on this basis would be inappropriate, even if a timely motion were filed.  Accordingly, the respondent's motion will be denied.

**ORDER:**  The motion is denied