[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 9, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-10510
Non-Argument Calendar

_____

BIA No. A72-162-461

XING LIN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(January 9, 2009)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Xing Lin, through counsel, petitions us for review of the Board of Immigration Appeals' (BIA) order of 3 January 2008 denying his fifth and sixth motions to reopen his removal proceedings. Upon review, we DENY the petition and AFFIRM the BIA's decision.

## I. BACKGROUND

This case has a long and tortuous history in which we ourselves have already made an appearance. We retrace its byzantine contours in some detail in order to clearly identify the issues at hand and to address them in an orderly fashion.

Lin, a native and citizen of the Fujian province of China, arrived in the United States on 18 March 1992. Administrative Record ("AR") at 825. Over a year later, on 24 May 1993, Lin filed an application for asylum and withholding of removal, based on his student democracy involvement. Id. at 791-95. On 6 April 1998, he was served with a Notice to Appear ("NTA") and charged with removability, pursuant to INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), as an alien not in possession of a valid entry document. Id. at 825. On 12 April 1999, an Immigration Judge ("IJ") found Lin removable and denied his application for asylum and withholding of removal. Id. at 632. On 19 May 1999, Lin filed an appeal with the BIA, which the BIA denied as untimely. Id. at 618-20, 616.

On 19 December 2000, Lin filed his first motion to reopen with the IJ and claimed that: (1) the NTA contained erroneous allegations of fact concerning his

2

manner of arrival in the United States, as he lawfully had been admitted and was removable only because he had overstayed his period of admission; (2) he recently had married a U.S. citizen and was seeking an adjustment of status based on this marriage; (3) he was submitting new evidence establishing his eligibility for asylum, based on the recent birth of his child, a U.S. citizen; and (4) he was eligible for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Id. at 582-93. On 4 January 2001, the former Immigration and Nationalization Service ("INS") filed an opposition to Lin's motion to reopen and argued both that the motion was untimely and that Lin had failed to establish changed country conditions. Id. at 580.

On 4 January 2001, the IJ denied Lin's motion to reopen as untimely, pursuant to 8 C.F.R. § 3.23(b)(1), and concluded that Lin did not show any changed country conditions that would give rise to the exception to the time bar outlined in § 3.23(b)(4)(i). Id. at 579. The IJ suggested that because Lin was seeking to reopen for the purpose of pursuing adjustment of status, he should seek the INS's joinder in reopening for this limited purpose, thereby circumventing the time and number restrictions on motions to reopen. Id.

On 17 January 2001, Lin appealed the IJ's denial of his motion to reopen to the BIA. Id. at 575-76. In his brief, he asserted that the IJ failed to address his

3

argument that new evidence established that he was removable as an alien who had been admitted lawfully, but had overstayed his period of admission. Lin also argued that in light of his marriage to a U.S. citizen and the birth of his U.S. citizen child, the BIA should sua sponte reopen his proceedings. Finally, Lin contended that he should be permitted to file a successive asylum application. Id. at 561-65. The former INS filed a brief in opposition, which relied on its previously-filed opposition to the motion to reopen. Id. at 560.

The BIA dismissed Lin's appeal, concluding that the IJ correctly determined that Lin's motion to reopen was untimely. Id. at 555. In addition, the BIA noted that an IJ's power to reopen a case sua sponte is very limited and is not meant to cure filing defects. The BIA also underscored the fact that Lin initially admitted to the charges alleged in the NTA – namely, that he entered the United States without possessing or presenting a valid entry document. Id. Finally, the BIA rejected Lin's claims that he had established prima facie eligibility for asylum or CAT relief based upon his marriage, the American birth of his child, or his desire to have more children, because his argument was "too speculative" and lacked sufficient support in the record.[1] Id. at 556.

---

[1] The BIA did note that reopening for asylum claims based on coercive family planning policies would not be foreclosed by the time and number limitations on motions set forth in 8 C.F.R. § 3.2. Id. at 556.

4

On 18 December 2001, Lin filed a second motion to reopen with the BIA, in which he contended that his case should be reopened pursuant to Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), because the immigration service agency that acted as his attorney during his initial removal proceedings erred by filing an untimely appeal of the IJ's decision. AR at 545-46. The BIA again denied Lin's motion, finding that it was barred by numerical limitations for motions to reopen and that he had failed to meet the requirements of a Lozada claim. Id. at 538-39.

On 12 December 2002, Lin filed his third motion to reopen based on the births of his two daughters in the United States, arguing that, because this violated China's one-child policy, he would be forcibly sterilized if returned to China. Id. at 497. Lin submitted the following documents in support of his motion: (1) his own affidavit, in which he attested to his marriage and the births of his two children; (2) a marriage certificate; (3) a copy of the "Newborn Identification" for each of his children; (4) an unpublished 2001 BIA decision reopening exclusion proceedings based on an asylum claim pertaining to China's coercive family-planning policies; and (5) various articles and newsletters depicting the mistreatment of individuals under China's family-planning policy. Id. at 500-535. The INS opposed the motion, arguing that (1) it was untimely filed more than ninety days after the BIA's 30 January 2002 order denying reopening and (2) that the BIA had withdrawn its policy of granting untimely motions to reopen filed by

5

applicants seeking asylum based solely on coercive population control policies. Id. at 483; see also supra note 1.

Once again, the BIA denied the motion to reopen, concluding that it was numerically barred and did not fall within any exception to the numerical limitations. The BIA concluded that the births of Lin's children and his marriage were "changed circumstances" in so far as his personal situation in the United States was concerned but did not constitute "changed circumstances" in China. AR at 480. The BIA further found that Lin's motion did not fall within the exception to the time-bar, as explained in Matter of X-G-W-, Interim Decision 3352 (BIA 1998), because his original asylum claim was not based on his opposition to China's coercive population control policies, but rather on his alleged involvement in a student democracy movement. AR at 480-81. On 10 March 2003, Lin petitioned us for review of the BIA's decision. We affirmed the BIA's decision and denied the petition. See Lin v. U.S. Att'y Gen., 90 Fed. Appx. 382 (11th Cir. 2003) (per curiam).

A little over a year later, on 29 March 2004, Lin filed yet another motion with the BIA, which he styled as a "Motion to Remand Pursuant to 8 C.F.R. § 208.4 Without Reopening Based on Changed Personal Circumstances." Id. at 329-41. Lin argued that his case should be remanded to the IJ to allow him to reapply for asylum, without having to file a motion to reopen, based upon the

6

births of his two children.  Id. at 329-31.  Lin further contended that pursuant to the International Covenant on Civil and Political Rights ("ICCPR"), the government was barred from removing him without giving consideration to the effects on his family.  Id. at 338-39.  Finally, Lin claimed that his case should be reopened because he was eligible for adjustment of status based on the approved visa petition filed by his wife.  Id. at 340.

Lin submitted the following documents in support of his motion: (1) an application for asylum and withholding of removal, in which he argued that he would be forcibly sterilized if returned to China because he had violated that country's family planning policies; (2) his marriage certificate; (3) his wife's certificate of naturalization; (4) a record of the birth of one of his children; (5) a copy of the "Newborn Identification" for his other child; (6) an approval notice for a visa petition; (7) an adjustment of status application; (8) four unpublished BIA decisions; (9) a 1988 letter from a Chinese family planning commissioner; (10) information regarding regional affairs in China in 1989; (11) a "newsfeed" from 1998; (12) an article from 1997; (13) national affairs articles from 1991, 1994, and 1995; (14) a 2001 report on China's "Law of Population and Family Planning," setting forth the country's family planning laws; (15) China's state council document on family planning, stating that family planning is a "basic national policy;" (16) the 2002 State Department Country Report on Human Rights

7

Practices, stating that the Chinese government prohibits the use of physical coercion to compel people to submit to abortion or sterilization; and (17) a 2003 article regarding a forum that was held to discuss population issues, during which it was stated that China needed to continue to keep a "tight grasp" on population. Id. at 346-477.

On 19 July 2004, the BIA denied the motion, which it construed as Lin's fourth motion to reopen. Id. at 322. The BIA found that the motion was untimely and numerically barred and that, notwithstanding the procedural hurdle, it would be denied because Lin failed to establish exceptional or extraordinary circumstances which might account for his year-long delay in filing the motion. Id.

Lin then filed his fifth motion to reopen, entitled "Motion to File Successive Asylum Application Pursuant to 8 C.F.R. § 208.4," on 17 November 2004. Id. at 100-115. In this motion, which was nearly identical to his 29 March 2004 motion, Lin again argued that he should be allowed to file a motion to reapply for asylum, without having to file a motion to reopen, based upon the births of his children. Id.

On 3 November 2006, Lin filed his sixth motion to reopen. Id. at 16-32. Lin raised the same arguments that he advanced in his fourth and fifth motions, and submitted copies of his marriage certificate, birth records of his two children, an adjustment of status application, and a visa petition approval notice, as well as

8

several new documents relating to the family planning policies of China. The new documents included three articles regarding China's family planning, which were from 1989, 1996, and 1997, as well as the following: (1) two 2003 administrative decisions from family planning boards in two Chinese provinces (one of which was Fujian province), stating that any child of a Chinese national living overseas shall be treated as a Chinese citizen, and Chinese nationals who violate the family planning regulations while overseas shall be subject to family planning enforcement upon resettlement in China, id. at 56-59; (2) a 2002 report regarding brides from mainland China who were forced to undergo abortion or sterilization, id. at 60-61; and (3) a 2005 Second Circuit decision, id. at 87-97.

On 3 January 2008, the BIA denied Lin's fifth and sixth motions to reopen as untimely and numerically barred. (Id. at 2-5). The BIA concluded that Lin did not qualify for an exception to the applicable time and numerical limitations because he did not establish that a material change had occurred in China with respect to its enforcement of the population control law. Id. at 3. The BIA noted that it had not found a "pattern or practice of persecution by the Chinese government against applicants on account of the birth of children in the United States." Id. The BIA also echoed our previous holding in Lin that marriage and the birth of children are changed personal circumstances and not changed circumstances arising in the country of nationality, for purposes of 8 C.F.R. §

9

1003.2(c)(3)(ii). Id; see also Lin, 90 Fed. Appx. at 382. The BIA further determined that Lin's assertion in his asylum application that he would be forcibly sterilized if returned to China did not establish changed country circumstances because this representation was not based on personal knowledge. AR at 3.

The BIA determined that several of the documents that Lin submitted were available when he filed his first motion to reopen and so declined to consider them. AR at 4. It also concluded that the circumstances did not warrant a sua sponte reopening, particularly in light of the fact that Lin repeatedly filed duplicative motions without leaving the United States as ordered. Id. Next, the BIA found that Lin could not circumvent the reopening requirements by filing a "successive asylum application," because an alien who is subject to a final order of removal is barred by both statute and regulation from filing an untimely motion to reopen to submit a successive asylum application. Finally, the BIA determined that Lin had not pointed to any changed circumstance since the issuance of the previous five decisions in his case that would make him eligible for an adjustment of status through his wife. Id.

Lin now petitions us for review of the BIA's denial of his fifth and sixth motions to reopen. Lin makes the following arguments in support of his petitions: (1) the BIA contradicted its own precedent by denying his motions to reopen based on his eligibility for adjustment of status; (2) the BIA erred in finding that he had

10

not established changed country conditions in China relating to the enforcement of family planning policies; (3) equitable tolling should have tolled the time limit for filing his motions to reopen; and (4) Lin sufficiently made out a prima facie case of eligibility for asylum.

## II. DISCUSSION

A. Standards of Review

"We review the BIA's denial of a motion to reopen for an abuse of discretion." Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005) (per curiam). Review "is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation marks and citation omitted). "Generally, motions to reopen are disfavored, especially in a removal proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted).

A party may file only one motion to reopen removal proceedings and that motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(A), (B). A motion to reopen must be filed no later than ninety days after the final administrative decision. See 8 C.F.R.

11

§ 1003.2(c)(2). There are three exceptions by which a movant can circumvent the ninety-day time limit, one of which is relevant to this appeal. The relevant exception provides that the time limit shall not apply if the motion to reopen is "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii). To meet this exception, a movant must show "that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." Abdi, 430 F.3d at 1149 (quoting 8 C.F.R. § 1003.2(c)(1)).

An alien who attempts to show that the evidence is material bears a heavy burden and must present evidence that satisfies the BIA that if proceedings were reopened the new evidence likely would change the result in the case. See Ali, 443 at 813. In our consideration of Lin's previous appeal, we determined that changed personal circumstances are not akin to changed circumstances arising in the country of nationality. See Lin, 90 Fed. Appx. at 382; see also Yang v. U.S. Att'y Gen., 275 Fed. Appx. 915, 917 (11th Cir. 2008) (same). Other circuits have arrived at the same conclusion. See, e.g., Wang v. BIA, 437 F.3d 270, 274 (2d Cir. 2006) ("[I]t would be ironic, indeed, if petitioners . . ., who have remained in the United States illegally following on order of deportation, were permitted to

12

have a second and third bite at the apple simply because they managed to marry and have children while evading authorities.").

B.  Analysis

An as initial matter, we do not have jurisdiction over Lin's claim that the ninety-day deadline for filing a motion to reopen should have been equitably tolled, as he did not raise this issue before the BIA.  See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (noting that we "lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto," which requires the petitioner to raise an argument in either his notice of appeal or brief before the BIA).  Lin's fifth and sixth motions to reopen were filed several years after the final administrative order was issued on 19 September 2001.  Accordingly, they were untimely under 8 C.F.R. § 1003.2(c)(2).  They also were numerically barred because only one motion to reopen may be filed.  See 8 U.S.C. § 1229a(c)(7)(A).  Thus, the only way that the BIA could have entertained Lin's fifth and sixth motions was if he established changed circumstances in China, using material evidence that was not available or could not have been discovered during his April 1999 removal hearing.  See 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii).

Lin's burden was a heavy one and we conclude that he did not meet it. First, Lin's argument that the births of his two children in the United States were sufficient to establish changed circumstances is without merit in light of our decision in Lin's previous appeal, see Lin, 90 Fed. Appx. at 382, and our decision in Yang. See Yang, 275 Fed. Appx. at 917; see also, e.g., Wang, 437 F.3d at 274. Second, the vast majority of the documents that Lin provided to the BIA either regarded his personal circumstances or predated his 1999 hearing and he made no showing that the latter category of documents could not have been discovered or presented at the previous hearing. See AR at 36-55, 64-78.

The remaining documents – (1) the two 2003 administrative decisions from family planning boards in two Chinese provinces, id. at 56-59; (2) the 2002 Taiwanese report regarding brides from mainland China who were forced to undergo abortion or sterilization, id. at 60-61; and (3) the 2005 Second Circuit decision – did not establish a material change in country conditions in China since Lin's 1999 hearing but rather detailed existing Chinese family planning policies. Lin also urges us to consider our decision in Li v. U.S. Att'y Gen., 488 F.3d 1371 (11th Cir. 2007) (per curiam), in which we vacated a BIA decision denying a motion to reopen based on new evidence regarding enforcement of the one child policy in the Fujian Province of China. We are not persuaded by Lin's argument

14

that the facts in his case are analogous to those in Li and find that the two cases are readily distinguishable.

In Li, the petitioner, a native of Lianjiang, Fujian Province, China, and the mother of two American-born children, provided, as a part of a motion to reopen, previously unavailable evidence that Fujian officials had intensified their persecution of parents of two children. See Li, 488 F.3d at 1373. In support of her motion, Li submitted (1) her own affidavit reporting second-hand accounts of forced sterilization and abortion in Lianjiang in 2005; (2) her mother's affidavit reporting increased family planning enforcement in Lianjing and the forcible sterilization of three women after the birth of their second child; (3) country reports and other State Department documents; (4) Congressional-Executive Commission evidence and congressional testimony; and (5) newspaper articles discussing forced abortions in Shandong Province. Id. at 1372-73. We determined that Li's evidence of a recent campaign of forced sterilization in her home village, consistent with government reports, satisfied the criteria for a motion to reopen. Id. at 1375. We further noted the absence of any evidence in the record that the Chinese national government or Fujian officials distinguished between parents of children born in China and those born abroad, and noted evidence suggesting just the opposite. Id. at 1376. Lin's documentary support does not match that provided by Li in either scope or detail. Accordingly, we would be hard pressed to find the

15

BIA's decision either arbitrary or capricious and we ultimately conclude that it was neither.

We do not reach Lin's arguments concerning his eligibility for status adjustment or the merits of his application for asylum, withholding of removal and CAT relief. Because Lin did not establish changed country conditions, he did not clear 8 C.F.R. § 3.2(c)(2)'s time and numerical hurdles and the BIA did not consider his untimely requests to file a new asylum claim. See Matter of C-W-L-, 24 I&N Dec. 346, 354 (BIA 2007) (holding that "[n]either the [BIA] nor the [IJ] has jurisdiction to consider a new asylum claim in proceedings that are administratively final and where the standards for reopening are not satisfied."). But see 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum in accordance with this section."); see Guan v. Bd. of Immigration Appeals, 345 F.3d 47, 49 (2d. Cir. 2003) (suggesting that an untimely asylum application based on changed personal circumstances may be filed without reopening proceedings).

## III. CONCLUSION

Lin petitions us for review of the Board of Immigration Appeals' (BIA) order of 3 January 2008 denying his fifth and sixth motions to reopen his removal proceedings. We conclude that the BIA correctly determined that Lin's motions were untimely and numerically barred and that Lin failed to demonstrate that an

exception to the time and number bars was warranted.  Accordingly, we DENY the

petition.