

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-8-2009

# Lin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4797

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Lin v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1566.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1566

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4797

HAI FA LIN,

Petitioner

v.

ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent

On Petition for Review of a Final Order of Removal
from the Board of Immigration Appeals
(Agency No. A73-149-966)

Submitted: February 3, 2009

Before: McKEE, STAPLETON, *Circuit Judges*, and IRENAS,* *Senior District Judge*.

(Filed: April 8, 2009)

OPINION

**IRENAS**, Senior United States District Judge.

---

* Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

This matter appears before this Court on Hai Fa Lin's petition for review of a decision and order of the Board of Immigration Appeals ("BIA"), entered on December 6, 2007, denying his motion to reopen. For the reasons set forth below, we will deny Lin's petition for review.[1]

## I.

Lin, a native and citizen of the People's Republic of China ("China"), was born June 11, 1963, in Changle City, Fujin Province. He was married in 1986, and his twin sons were born in 1987. (App. 197.) According to Lin, he was not permitted to register the births of his sons and was fined for violating China's on child policy. (App. 197.) He arrived in the United States on or about December 15, 1994, at New York, New York,[2] however, his wife and children remained in China. (App. 30.) His wife and one of his sons later came to the United States to join him on January 15, 2000. (App. 158.) Lin's third child, a daughter, was born on January 6, 2003, in the United States.[3] (App. 32.)

Upon Lin's arrival, the United States government commenced exclusion

---

[1] The BIA exercised its jurisdiction pursuant to 8 C.F.R. § 1003.2(a). This Court has jurisdiction to review the BIA's decision pursuant to 8 U.S.C. § 1252.

[2] While the majority of the record indicates that Lin arrived in the United States on December 15, 1994, the record is not completely consistent. The brief filed by Lin's counsel states Lin arrived on September 15, 1994, whereas the Immigration Judge's decision of January 11, 1996, indicates Lin arrived on February 15, 1994. However, because we are only reviewing Lin's most recent motion, the exact date of his entry into the United States is immaterial.

[3] It should be noted that Lin told immigration officials at the airport in 1994 that he had been forced to undergo sterilization, and as such, there is some question as to whether the third child is actually his. (App. 165, 175.)

proceedings because he lacked proper entry documents. (App. 204.) At a hearing before an Immigration Judge ("IJ") on February 3, 1995, Lin admitted that he lacked the required documents and conceded that he was excludable. In an attempt to avoid removal, Lin applied for asylum and protection under the Convention Against Torture,[4] based on his alleged sterilization and violation of China's family planning policies. After a hearing before an IJ on January 11, 1996, Lin's petition for asylum was denied. (App. 195-203.) The BIA affirmed the IJ's decision on August 30, 1996. (App. 192-93.)

Lin subsequently filed a motion to reopen based on the enactment of Section 601 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which amended the definition of refugee to include an individual who has been persecuted for resistance to a coercive population control program. Pub L. 104-208, 110 Stat. 3009-546; 8 U.S.C. § 1101(a)(42). That motion was granted on June 21, 2000, because "the law has significantly changed," and the case was remanded to an IJ for further proceedings. (App. 190-191.) A new petition for asylum on behalf of Lin, his wife, and one of their sons was heard by an IJ on February 7, 2003.[5] This petition was based on their alleged past violations of the family planning policy and fear of persecution for said violations if they returned to China. (App. 159.) The IJ denied the petition, finding that they failed to

---

[4] United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, G.A. Res 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, U.N. Doc. A/39/51 (1984).

[5] This was the only petition for asylum made on behalf of Lin's wife or son. All of Lin's subsequent motions and petitions were made only on his own behalf.

establish they would be persecuted if returned to China. (App. 171-88.) The BIA affirmed the decision on November 23, 2004. (App. 98.) Lin did not appeal that decision to this Court.

Lin filed another motion to reopen on May 18, 2005, based solely on the birth of his third child. (App. 136-43.) On June 30, 2005, the BIA denied the motion because Lin failed to qualify for an exception to the timeliness requirement pursuant to 8 C.F.R. § 1003.2(c)(3)(ii), as he offered no proof of changed conditions in China. (App. 98.) Lin did not appeal that decision to this Court.

On October 1, 2007, Lin filed the "Motion for Adjudication of an Asylum Application Filed Under 8 U.S.C. § 1158(a)(2)(D); and/or Motion to Reopen Due to Changed Country Conditions"[6] at issue before us. (App. 10-27.) Lin alleged that "his membership and participation in the [China Democracy Party] and the birth of his third child in violation of the Chinese government's coercive population control program" materially affected his eligibility for asylum. (App. 11.) Alternatively, he requested that

---

[6] Despite the title of Lin's petition, he is unequivocal in his expressing his intent that it not be construed as a motion to reopen, stating:

> **ALSO PLEASE NOTE**: The request for a new hearing to allow submission of a new asylum application is *not a motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(3)(ii) and should not be construed as such.* The Respondent and Counsel are fully cognizant that a change of personal circumstances in the United States is not a change of circumstances in the country of nationality. Any decision in this case which cites to 8 C.F.R. § 1003.2(c)(3)(ii) would clearly misunderstand the nature of this motion.

(App. 10.) However, despite this statement, the second section of his motion begins with an extensive discussion of 8 C.F.R. § 1003.2(c), and argues extensively that there are changed country conditions in China. (App. 17-26.)

4

his proceedings be reopened due to changed country conditions in China, namely the enforcement of the "coercive population control program." (App. 11.) In support of his motion, Lin submitted: (1) a one page affidavit (App. 39); (2) a 1999 document entitled "The Campaign of Chang Le City to Propagandize the General Family Planning Knowledge into Mass Families by Means of Questions and Answers on Visiting and TV" ("1999 Questions and Answers"), (App. 40-49); (3) purported government documents pertaining to whether family planning laws applied to Chinese citizens in other countries, (App. 50-61); (4) Operational Guidance Note for China produced by the Home Office, Border and Immigration Agency of the United Kingdom, (App. 63-72); (5) a *New Yorker* article entitled, "Enemy of the State," (App. 74-84); and, (6) photographs of Lin engaged in political activities on behalf of the China Democracy Party ("CDP"). (App. 86-96.)

On December 6, 2007, the BIA denied Lin's motion because it "exceed[ed] the numerical and temporal limitation for motions to reopen." (App. 7.) Relying on *In re C-W-L*, 24 I. & N. Dec. 346 (B.I.A. 2007), the BIA rejected Lin's argument that 8 U.S.C. § 1158(a)(2)(D) provided an independent basis for filing a late motion to reopen an application for asylum. Therefore, because his association with the CDP "is a change in personal circumstances," rather than country conditions, it did "not permit reopening without regard to the time and numerical limitation on motions to reopen under 8 C.F.R. § 1003.2(c)(3)(ii)." (App. 8.) Relying on four previous BIA decisions,[7] the BIA also

---

[7] *See In re S-Y-G-*, 24 I. & N. Dec. 247 (B.I.A. 2007); *In re J-H-S-*, 24 I. & N. Dec. 196 (B.I.A. 2007); *In re J-W-S-*, 24 I. & N. Dec. 185 (B.I.A. 2007); *In re C-C-*, 23 I. & N.

5

concluded that the documents Lin provided did "not demonstrate that [Lin] faces a reasonable possibility of punishment rising to the level of persecution, and we do not find that the evidence presented establishes prima facie eligibility for relief."  (App. 8.)

Lin filed the instant Petition for Review on December 28, 2007.

## II.

We review the BIA's denial of a motion to reopen for an abuse of discretion.  *See Liu v. Attorney General*, 555 F.3d 145, 148 (3d Cir. 2009).  Similarly, we uphold the BIA's factual determinations if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal citations and quotations omitted), and we reject the BIA's findings only if "any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.*; 8 U.S.C. § 1252(b)(4)(B).

## III.

Lin argues that the birth of his third child and his activities with the CDP are "changed circumstances which materially affect [his] eligibility for asylum."  8 U.S.C. § 1158(a)(2)(D).  He further argues that his changed personal circumstances entitle him to an independent basis for filing a petition to reopen under 8 U.S.C. § 1158(a)(2)(D), without regard to the requirements for reopening based on "changed country conditions" in 8 U.S.C. § 1229a(c)(7)(C) and "changed circumstances in the country of nationality" in

Dec. 899 (B.I.A. 2006).

6

8 C.F.R. § 1003.2(c)(3)(ii). Lin's argument is not a novel one. To the contrary, it is one that has been recently considered and expressly rejected by this Court. *See Liu v. Attorney Gen.*, 555 F.3d 145 (3d Cir. 2009).

In *Liu*, this Court examined 8 U.S.C. §§ 1158(a)(2)(D), 1229a(c)(7)(C), and 8 C.F.R. § 1003.2(c)(3)(ii) and concluded that these provisions, as well as 8 C.F.R. §§ 1003.2(c)(2), 1003.23(b), "must be applied in harmony." *Id.* at 150. The Court held that "8 U.S.C. § 1158(a)(2)(D) allows successive asylum applications only within the 90-day reopening period for orders denying asylum unless the alien can show changed country conditions on the required accompanying motion to reopen."[8] *Id.* Therefore, "after the completion of removal proceedings as alien must file an asylum application in conjunction with a motion to reopen and must meet the time and numerical limitation on motions to reopen." *Id* at 152.

Were we to heed Lin's request that his motion not also be treated as a motion to reopen pursuant to 8 C.F.R. § 1003.2(c)(3)(ii), our analysis could cease because Lin would have failed to comply with the requirement to accompany a subsequent application for asylum with a petition to reopen. However, because, despite his protestations, Lin did discuss 8 C.F.R. § 1003.2(c)(ii), we will consider whether he has met the requirements of that section.

---

[8] In reaching this conclusion, this Court also expressly approved the BIA's interpretation in *In re C-W-L-*. *See Liu*, 555 F.3d at 151 (quoting *In re C-W-L-*, 24 I. & N. Dec. at 354).

7

In the proceedings below, Lin offered the 1999 Questions and Answers as well as three purported administrative opinions from Fujin province officials regarding the imposition of the family planning policies. (App. 40-61.) The primary document is from 1999, and the purported 2006 administrative opinions do not reflect any change in the policy since Lin's application was last heard and denied in 2003. As such, these documents fail to demonstrate changed conditions in China sufficient to satisfy 8 C.F.R. § 1003.2(c)(3)(ii).

Furthermore, the BIA noted that the "purported government documents submitted by the applicant concerning the imposition of sanctions repatriated Chinese who have violated local family planning policies are the same or equivalent to the documents" addressed in *In re S-Y-G-*, 24 I. & N. Dec. 247 (B.I.A. 2007) and *In re J-W-S-*, 24 I.& N. Dec. 185 (B.I.A. 2007). (App. 8.) In those cases, the BIA rejected the 1999 Question and Answer document submitted by Lin in this case, (App. 40-49), as well as administrative decisions that are substantially similar to those submitted by Lin regarding the application of the population control program. (App. 50-61.) The BIA continued:

> Like the documents discussed in the cases cited above, the materials submitted by [Lin] indicate that Chinese returning from abroad who violate local family planning policies are subject to the same penalties as local residents. However, [Lin]'s Exhibit No. 2 [the 1999 Question and Answer], which described specific sanctions, only reflects that fees or fines may be imposed for violations of family planning policies. Language in this document which addresses conception and births in excess of family planning regulations advises abortion and sterilization, but does not reflect that such measures are mandatory.

(App. 8.)

8

The documents submitted by Lin are substantially similar to the documents addressed in *In re S-Y-G-* and *In re J-W-S-*, and, therefore, are sufficient to support the BIA's findings.[9]

## IV.

For the foregoing reasons, Lin's petition for review is denied.

---

[9] In *Zheng v. Attorney General*, "the BIA did little more than quote passages from its earlier decision in *J-W-S-* without identifying–let alone discussing-the various statements contained in the record before it. . . ." 549 F.3d 260, 268 (2008). However, while the BIA in the case before us also relied heavily on *J-W-S-*, the BIA's decision did specifically address all of the exhibits filed by Lin, and they are substantially the same as those in *J-W-S-*.