Erwin Estuardo GARCIA–
LOPEZ, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–70200.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 2003.

Filed June 26, 2003.

Matt Adams, Northwest Immigrant Rights Project, Granger, WA, for the petitioner.

Kurt B. Larson (argued) and Ernesto H. Molina, Jr. (briefed), Office of Immigration Litigation, Washington, DC, for the respondent.

Before LAY,* FERGUSON, and GOULD, Circuit Judges.

FERGUSON, Circuit Judge:

Erwin Estuardo Garcia–Lopez petitions from a final order of deportation entered by the Board of Immigration Appeals

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

("BIA"). Garcia–Lopez contends that the BIA erred when it determined that he was ineligible for suspension of deportation under the Immigration and Nationality Act (INA)'s "petty offense" exception. *See* 8 U.S.C. § 1182(a)(2)(A)(ii)(II) (1996). Specifically, Garcia–Lopez asserts that his guilty plea conviction pursuant to a California "wobbler" statute, under which the offense may be treated as either a misdemeanor or a felony, did not result in a conviction of a crime for which the maximum penalty exceeds imprisonment for one year. Because we determine that the state court's declaration that Garcia–Lopez's offense was a misdemeanor is binding on Garcia–Lopez's subsequent immigration proceedings, we reverse.

## I.

Garcia–Lopez is a native and citizen of Guatemala. When he was a child, his biological mother died as a result of being beaten by his stepfather. Thereafter, Garcia–Lopez was raised by his aunt, Erma Lopez, whom he now looks upon as his mother. In 1983, Ms. Lopez came to the United States. In 1985, Garcia–Lopez and his cousin David, Ms. Lopez's son, came to the United States to join her in California.

During his adolescence, Garcia–Lopez experienced severe depression and conflicts with Ms. Lopez. As a result, he moved out of her house and for a time became homeless. In July of 1992, while he was homeless, he was arrested for stealing a purse. On August 7, 1992, he pleaded guilty to grand theft.[1] Without sentencing Garcia–Lopez, the state court judge suspended the proceedings and ordered probation for a period of three years, the first 180 days of which were to be spent in the county jail. Garcia–Lopez was later released to a halfway house and placed on probation.

In September of 1993, Garcia–Lopez moved to Seattle, Washington to obtain employment. As a result, he was in violation of his probation, which prohibited him from leaving California. He found a job and remained steadily employed for the next three years. In September 1996, Garcia–Lopez returned to Los Angeles to turn himself in for his probation violation. On September 16, 1996, the same state court judge that had heard Garcia–Lopez's initial case issued an order reinstating Garcia–Lopez's probation, designating the grand theft offense to which Garcia–Lopez had pleaded a misdemeanor, and dismissing the charges.

While Garcia–Lopez was working in Washington, he was detained by immigration authorities. On September 15, 1995, the Immigration & Naturalization Service (INS) commenced deportation proceedings against him. On December 21, 1995, through counsel, Garcia–Lopez admitted the allegations and conceded deportability, but applied for a suspension of deportation. On October 7, 1996, the Immigration Judge (IJ) granted the application. The IJ found that it was bound by the state court's classification of the offense as a misdemeanor, and therefore Garcia–Lopez remained eligible for suspension of deportation despite his conviction. The IJ also concluded that Garcia–Lopez met the remaining requirements for suspension of deportation, including finding that the deportation would be an extreme hardship on either Garcia–Lopez or a close member of his family.

INS filed a timely appeal to the BIA. On January 14, 2002, the BIA sustained the

---

1. CAL. PENAL CODE § 487.2 (West 1992) defines grand theft as "[theft] [w]hen the property is taken from the person of another."

appeal and denied Garcia–Lopez's application for suspension of deportation on the basis that Garcia–Lopez did not meet the requirements of the petty offense exception. Garcia–Lopez filed this timely appeal on February 7, 2002.

## II.

■ Both parties concede that the instant case falls within the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).[2] Under the transitional rules, we are precluded from reviewing "any discretionary decision" including decisions pursuant to 8 U.S.C. § 1182(a)(2). *See* IIRIRA § 309(c)(4)(g). However, we continue to retain jurisdiction to consider those elements of statutory eligibility that do not involve the exercise of discretion, including questions relating to whether a particular conviction constitutes a deportable offense. *See Lafarga v. INS*, 170 F.3d 1213, 1215 (9th Cir.1999) (citing *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997)); *Coronado–Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir.1997). Thus, we have jurisdiction under 8 U.S.C. § 1105(a) unless we determine that Garcia–Lopez does not meet the requirements for statutory eligibility. *Lafarga*, 170 F.3d at 1215.

## III.

■ In general, "[w]e review an agency's application of a statute *de novo*." *Id.*

We accord deference to the INS's construction of a statute when it is a " 'construction of the statute which it administers.' " *INS v. Aguirre–Aguirre*, 526 U.S. 415, 424, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The instant case, however, involves a question of interpretation of the California Penal Code. Since this is not a statute which the BIA administers or has any particular expertise in interpreting, no deference is accorded to the BIA's interpretation.[3]

## IV.

Under the INA, an alien is excludable if she is "convicted of, or ... admits having committed, or ... admits committing acts which constitute the essential elements of ... a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i). However, there is a "petty offense" exception for cases in which:

the maximum penalty possible for the crime of which the alien was convicted ... did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months.

2. IIRIRA's transitional rules apply to aliens whose deportation proceedings began prior to April 1, 1997, and whose final deportation order was entered after October 30, 1996. *Magana–Pizano v. INS*, 200 F.3d 603, 607 (9th Cir.1999).

3. The INS asserts that we must give deference to the BIA's construction of the relevant provisions of the INA. However, this is true only to the extent the relevant provisions of the statute are silent or ambiguous. *See Murillo–Espinoza v. INS*, 261 F.3d 771, 773 (9th Cir. 2001) (quoting *Chevron*, 467 U.S. at 842–43,

104 S.Ct. 2778). In the instant case, the BIA did not rest its determination on its interpretation of the INA, but rather on its interpretation of the California Penal Code. Moreover, the only applicable portion of the INA is unambiguous, providing for statutory ineligibility for aliens convicted of crimes except in cases in which the "maximum penalty possible for the crime ... did not exceed imprisonment for one year" and "the alien was not sentenced to a term of imprisonment in excess of 6 months." 8 U.S.C. § 1182(a)(2)(A)(ii).

8 U.S.C. § 1182(a)(2)(A)(ii)(II). We have previously determined that grand theft is a crime involving moral turpitude. *See Rashtabadi v. INS*, 23 F.3d 1562, 1568 (9th Cir.1994). The INS concedes that Garcia–Lopez was not sentenced to a term of imprisonment in excess of six months, therefore the only question before us is whether Garcia–Lopez's guilty plea conviction under CAL. PENAL CODE § 487.2 was for a crime with a maximum penalty in excess of one year.

### A. The California "Wobbler" Statute

■ Under California law, grand theft other than theft of a firearm is punishable by "imprisonment in a county jail not exceeding one year *or* in the state prison." CAL. PENAL CODE § 489(b) (West 1992) (emphasis added). Because the offense can result in a range of punishments, § 487 is referred to as a "wobbler" statute, providing for either a misdemeanor or a felony conviction. Whether a "wobbler" is determined to be a misdemeanor or a felony is controlled by CAL. PENAL CODE § 17(b), which sets out the range of judgments by which an offense is categorized "for all purposes" subsequent to judgment. *See* CAL. PENAL CODE § 17(b) (West 1992); *see also United States v. Robinson*, 967 F.2d 287, 293 (9th Cir.1992); *People v. Banks*, 53 Cal.2d 370, 387, 1 Cal.Rptr. 669, 348 P.2d 102 (1959). Garcia–Lopez asserts

that his offense is properly categorized as a misdemeanor under either § 17(b)(1) or (3). The INS contends that neither is applicable.[4]

### B. Treatment of Garcia–Lopez's Offense Under § 17(b)(1)

■ Garcia–Lopez initially contends that his offense is properly considered a misdemeanor because he was never sentenced to imprisonment in a state prison and was instead given probation and a period of confinement in the county jail. A wobbler offense is treated as a misdemeanor "[a]fter a judgment [imposes] a punishment other than imprisonment in the state prison." CAL. PENAL CODE § 17(b)(1). Imposition of a sentence other than imprisonment in the state prison automatically converts a felony to a misdemeanor. *People v. Glee*, 82 Cal.App.4th 99, 102, 97 Cal.Rptr.2d 847 (2000).[5]

In *United States v. Robinson*, we held that a suspended sentence on a wobbler is treated as a felony for purposes of the Sentencing Guidelines when there is no subsequent action by the state court to designate the offense as a misdemeanor. *Robinson*, 967 F.2d at 293. We reasoned that § 17(b)(1) did not apply because "the court suspended imposition of sentence[,] ... [and therefore] never entered a judg-

---

4. The INS also contends that Garcia–Lopez "admitted" that he was convicted of a felony because, in support of the initial application, Garcia–Lopez's accredited representative stated that Garcia–Lopez had received a felony sentence. As an initial matter, the representative's statement was patently inaccurate, as Garcia–Lopez was never actually sentenced. More importantly, Garcia–Lopez's belief about the nature of his offense is irrelevant to the purely legal question of how the offense was categorized or what the maximum penalty was. Similarly, the statement of Garcia–Lopez's representative as to a matter of law has no legal effect. *See Matter of Ramirez-Sanchez*, 17 I & N Dec. 503 (BIA 1980). The

INS's contention that Garcia–Lopez is bound by this statement must fail.

5. Although a person who pleads guilty to a wobbler "acquire[s] the status ... not then final ... of a person convicted of a felony," *Banks*, 53 Cal.2d at 387, 1 Cal.Rptr. 669, 348 P.2d 102, California courts have rejected an interpretation of wobblers that presumes that, upon a guilty plea, a person is automatically convicted of a felony requiring the imposition of the three-strikes rule. *See People v. Superior Court (Alvarez)*, 14 Cal.4th 968, 975–76, 60 Cal.Rptr.2d 93, 928 P.2d 1171 (1997).

ment." *Id.* Subsequently, in *United States v. Qualls*, we applied *Robinson* in the context of suspended proceedings where only probation was imposed. 172 F.3d 1136, 1137 (9th Cir.1999) (en banc). Under *Robinson* and *Qualls*, because Garcia–Lopez was never subject to a judgment imposing punishment, § 17(b)(1) is inapplicable to his case. *But see Glee*, 82 Cal.App.4th at 105–06, 97 Cal.Rptr.2d 847 (where "court suspended proceedings, granted summary probation, ordered ... one year in the county jail and directed that probation be terminated upon completion of the jail term, it automatically rendered the crime a misdemeanor pursuant to PENAL CODE § 17, subdivision (b)(1).").

### C. Treatment of Garcia–Lopez's Offense Under § 17(b)(3)

■ Garcia–Lopez next asserts that his conviction must be treated as a misdemeanor because the state court declared it to be one at the 1996 proceedings. A wobbler offense "is a misdemeanor for all purposes ... [w]hen the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application ... thereafter, the court declares the offense to be a misdemeanor." CAL. PENAL CODE § 17(b)(3).

In *Lafarga v. INS*, we held, under facts nearly identical to the instant situation, that a state court's designation of a wobbler offense as a misdemeanor was binding on the BIA for the purpose of applying the petty offense exception. *See* 170 F.3d at 1216. The petitioner in *Lafarga* was convicted of an offense that, under the statute, "could have been designated as either a felony ... or a misdemeanor." *Id.* at 1215. The petitioner received an "undesignated probationary sentence," which she served successfully, and the judge then determined that the offense should be des-

ignated as a misdemeanor, for which the maximum possible penalty under Arizona law was six months. *Id.* at 1216. We held that this "misdemeanor conviction ... clearly falls in the petty offense exception [in 8 U.S.C. § 1182(a)(2)(A)(ii)]." *Id.*

■ In light of *Lafarga*, we hold that Garcia–Lopez's conviction in the instant case clearly falls within the bounds of the petty offense exception under 8 U.S.C. § 1182(a)(2)(A)(ii)(II). We note that in construing § 17(b) and its effect on the categorization of an offense, courts have repeatedly emphasized the significance of a state court's actions in specifically determining that an offense is a misdemeanor, either at the time of probation or "thereafter." In both *Robinson* and *Qualls*, we considered it significant that the state court had never determined that the wobblers in question were misdemeanors. *See Qualls*, 172 F.3d at 1137; *Robinson*, 967 F.2d at 293. Similarly, in *People v. Banks*, the Supreme Court of California specifically noted that the defendant in that case never sought to have his case categorized as a misdemeanor. *See* 53 Cal.2d at 387, 1 Cal.Rptr. 669, 348 P.2d 102. In light of our precedent, it is clear that a state court's designation of a criminal offense is binding on the BIA for purposes of determining whether there has been a conviction under the INA.

Our decision in *Murillo–Espinoza v. INS*, 261 F.3d 771 (9th Cir.2001), is not to the contrary. In *Murillo–Espinoza*, we held that the BIA permissibly construed portions of a 1996 amendment to the INA to preclude "the recognition of subsequent state rehabilitative expungement of convictions." 261 F.3d at 774(citing *In re Roldan–Santoyo*, Int. Dec. 3377(BIA 1999)). In *Murillo–Espinoza*, however, the BIA was construing the INA provision defining "conviction," not the state statute on expunged convictions. Thus, unlike in this

case, we accorded deference under *Chevron. Id.*

More importantly, a state court expungement of a conviction is qualitatively different from a state court order to classify an offense or modify a sentence. In the latter situation, the state court is clearly construing the nature of the conviction pursuant to state law. Both the BIA and at least one other circuit have held that a state court order vacating or modifying a sentence is valid for immigration purposes and is distinguishable from the expunged convictions at issue in *Murillo–Espinoza. See Sandoval v. INS*, 240 F.3d 577, 582–83 (7th Cir.2001); *In re Min Song*, 23 I & N Dec. 173, 2001 WL 1030900 (BIA 2001). In *Min Song*, the BIA held that when a state court vacated a sentence and resentenced the petitioner to a term of less than one year, the new sentence was determinative and removal proceedings were terminated. *Id.* The decision specifically considered the BIA's reasoning in *In re Roldan–Santoyo* and determined that it was not controlling. *Id.* Similarly, in *Sandoval v. INS*, the Seventh Circuit held that a modified conviction must be given effect in subsequent immigration proceedings, rejecting the BIA's argument that any modification of a conviction was made pursuant to a state rehabilitative statute and therefore had to be ignored for purposes of the immigration law. 240 F.3d at 582–83.

In light of our decision in *Lafarga* and the above caselaw pertaining to modified convictions, we see no conflict between our holding and *Murillo–Espinoza.* Because the offense of which he was convicted was a misdemeanor, Garcia–Lopez's maximum possible penalty under California law was less than six months. *See* CAL. PENAL CODE § 19 (West 1992). Therefore, Garcia–Lopez qualifies for the petty offense exception under 8 U.S.C. § 1182(a)(2)(A)(ii)(II).

V.

In conclusion, we find that the BIA erred in determining that it was not bound by the state court's designation of Garcia–Lopez's offense as a misdemeanor. Because the penalty for the offense did not exceed imprisonment for one year, and because Garcia–Lopez received an actual sentence of less than six months, Garcia–Lopez qualified for the petty offense exception. We reverse the BIA's decision and remand for further proceedings on any remaining questions pertaining to Garcia–Lopez's eligibility for suspension of deportation.

**REVERSED AND REMANDED.**