**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

QING LI CHEN,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney
General,

Respondent.

No. 06-71430

Agency No.
A76-641-064

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 8, 2007—Seattle, Washington

Filed May 2, 2008

Before: William C. Canby, Jr., Susan P. Graber, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

Joshua E. Bardavid and Patricia S. Mann, Law Offices of Theodore N. Cox, New York, New York, for the petitioner.

Anh-Thu P. Mai and Lyle D. Jentzer, Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

CANBY, Circuit Judge:

Petitioner Qing Li Chen is a citizen of China who is subject to a final order of removal. She seeks to file an application for

asylum based on a change in her personal circumstances. The Board of Immigration Appeals ("BIA") held that such an application could be presented only as part of a motion to reopen her removal proceedings. The BIA then denied the motion to reopen because it exceeded the limits on time and number for such motions. Chen now petitions for review of that denial.

Chen's petition presents a question of the proper interpretation of two arguably conflicting immigration statutes and their implementing regulations. One statute and its regulation provide that an alien who is subject to a final order of removal is limited to one motion to reopen the removal proceedings, which motion must be filed within 90 days of the entry of a final order of removal.[1] 8 U.S.C. § 1229a(c)(7)(A), (C)(i); 8 C.F.R. § 1003.2(c)(2). An exception to this time limit provides that there is no time limit for motions to reopen for asylum applications based on "changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii).[2] Chen does not assert a change in country conditions.

Another statute and its regulation provide that aliens who apply for asylum must do so within one year after arrival in the United States, and must show that they have not previously applied for and been denied asylum. 8 U.S.C. § 1158(a)(2)(B), (C); 8 C.F.R. § 208.4(a)(2). An exception to the number and time limits is provided, however, for aliens who can demonstrate "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 208.4(a)(4)(i)(B). Chen alleges a change in her personal circumstances that qualifies her for this exception.

---

[1]The statute contains an exception for battered spouses and children, which is not relevant to our case. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv).

[2]A regulation extends this exception to include freedom from the limits on number, and not just time, for such motions to reopen. *See* 8 C.F.R. § 1003.2(c)(3).

The question presented is whether the latter, broader exception permits Chen not only to avoid the general number and time limits of the asylum statute, § 1158, but also to avoid the number and time limits of the statute, § 1229a(c)(7), governing the reopening of removal proceedings by an alien subject to a final order of removal. In a recently published decision involving a different applicant, the BIA held that the answer to this question is "no." *In re C-W-L-*, 24 I. & N. Dec. 346 (B.I.A. 2007). We conclude that the BIA's interpretation of the two statutes, as they affect each other, is a reasonable one, and we defer to that interpretation. *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). We accordingly hold that the BIA did not err in ruling that Chen's motion to reopen is barred by the number and time limitations of § 1229a(c)(7), and we deny her petition for review.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Chen entered the United States on October 9, 1999. She was apprehended for presenting a counterfeit passport and, after being released on a $7,500 bond, she moved to New York City. An exclusion hearing was held and Chen failed to appear. She was ordered removed *in absentia* on November 24, 1999. A warrant issued for her removal, and she failed to comply with INS instructions for departure. She moved to reopen the removal proceedings, but her motion was denied. She filed an appeal of that denial, which the BIA rejected as untimely.

In 2001, Chen married Yan Zheng in New York City and the couple had their first child in 2002. Chen filed a second motion to reopen the removal proceedings in January 2004, and the immigration judge denied this motion as barred by the time and number limits of 8 C.F.R. § 1003.2(c)(2). The BIA affirmed.

---

[3]We have jurisdiction pursuant to 8 U.S.C. § 1252.

Over a year later, in 2005, Chen had her second child. She then filed a "Motion to File Successive Asylum Application Pursuant to 8 C.F.R. § 208.4," alleging that her changed personal circumstances would result in the forced sterilization of her or her husband if they returned to China because Chinese population control policy prohibits this second child. The BIA denied this motion, finding that it was time- and number-barred as a motion to reopen under 8 C.F.R. § 1003.2(c)(2). Chen petitioned this court for review.

## DISCUSSION

Under the Real ID Act, Pub L. No. 109-13, § 106(a), 119 Stat. 231, 310 (2005), this court may review the BIA's interpretation of the "changed circumstances" exception to the asylum statute. *Ramadan v. Gonzales*, 479 F.3d 646, 649-50 (9th Cir. 2007) (per curiam). As described above, Chen's ability to reopen the proceedings depends on two statutory provisions (and their accompanying regulations) that appear to conflict. Nothing in these statutes and regulations explicitly indicates whether a successive and untimely asylum application by an alien under an order of removal is subject to the limitations on motions to reopen. As we stated above, however, a recently published opinion of the BIA speaks to Chen's case.

**[1]** In *In re C-W-L-*, 24 I. & N. Dec. at 350-51, a three-judge panel of the BIA held that a successive and untimely asylum application filed by an alien under a final order of removal must satisfy the requirements for a motion to reopen. A published decision issued by a three-judge panel of the BIA has precedential effect and is entitled to deference under *Chevron*, so long as: (1) the underlying statute is ambiguous, and (2) the BIA decision itself is not arbitrary, capricious, or contrary to law. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012-14 (9th Cir. 2006).

**[2]** Congress has not unambiguously expressed its intent with regard to the question at hand. The asylum provision, 8

U.S.C. § 1158(a)(2)(D), allows consideration of a successive and untimely asylum application in cases of "changed circumstances." The provision governing motions to reopen states more narrowly, "There is no time limit on the filing of a motion to reopen if the basis of the motion is . . . changed country conditions arising in the country of nationality or the country to which removal has been ordered . . . ." 8 U.S.C. § 1229a(c)(7)(C)(ii). Although neither of these provisions is ambiguous taken individually, we consider them in light of each other.

> In making the threshold determination under *Chevron*, a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 127 S. Ct. 2518, 2534 (2007) (internal quotation marks, alterations and citations omitted). Nowhere does the statute indicate whether a successive and untimely asylum application after the entry of a removal order requires a motion to reopen. Because the statute is silent on the interaction between the two provisions at issue, we must defer to the agency as long as its interpretation is reasonable. *See Chevron*, 467 U.S. at 843.

**[3]** We conclude that the BIA's interpretation is reasonable. An alien subject to a final order of deportation must file any application for asylum with the BIA. *See* 8 C.F.R. § 208.4(b)(4). The issue for the BIA in *In re C-W-L-*, as in Chen's case, was whether to entertain the application as a free-standing claim for asylum subject to the more liberal exception in § 1158(a)(2)(D), without regard to the limits on

motions to reopen under § 1229a(c)(7). It was reasonable for the BIA to conclude that to permit such an avoidance of the time and number limits on motions to reopen would make nonsense of the more restrictive exception in § 1229a(c)(7). The only exception to the number and time limits for reopening provided by Congress was for asylum claims based on changed country conditions. The BIA stated that the narrow scope of this limitation would be entirely frustrated if an alien subject to removal who could not qualify for this exception were free to seek asylum under § 1158(a)(2)(D). *In re C-W-L-*, 24 I. & N. Dec. at 351. Accordingly, the BIA held that such an asylum application can be made only in connection with a motion to reopen, subject to the limitations of § 1229a(c)(7). *Id.* This interpretation of the reach of the two statutes was reasonable, and we defer to it.

Chen contends that the BIA's interpretation is unreasonable because it renders the broader changed conditions exception for asylum applications in § 1158 a nullity. That argument overstates the case. Section 1158 continues to apply to aliens seeking asylum who have not been adjudicated to be subject to removal. As the BIA noted in *In re C-W-L-*, an asylum applicant can still invoke this broader exception, albeit "principally at an earlier stage of proceedings than [ ] the 90-day reopening provisions." 24 I. & N. Dec. at 353. Although the broader exception to the number and time limits in the asylum provision may not assist aliens in Chen's position, it cannot be said that it is without effect in the statutory scheme under the BIA's interpretation.

**[4]** Nor are we persuaded that a regulatory comment cited by Chen mandates a different result. This comment, published by the Department of Justice's Executive Office for Immigration Review, accompanied a proposed rule change in 1997. 62 Fed. Reg. 10,312, 10,316 (Mar. 6, 1997). It states that the Department of Justice ("DOJ") decided to drop the regulatory requirement that a successive asylum petition based on changed circumstances be raised through a motion to reopen.

*Id.* We agree with the Seventh Circuit that the legal significance of this language is not entirely clear, and it does not trump the legal effect of the BIA's interpretation of the two statutes. *See Cheng Chen v. Gonzales*, 498 F.3d 758, 760 (7th Cir. 2007). Moreover, as the BIA's decision points out, the DOJ's failure to require motions to reopen in every case does not necessarily mean that a motion to reopen is not required when the alien is subject to a final order of deportation. *In re C-W-L-*, 24 I. & N. Dec. at 353. It is not inconsistent with the DOJ's comment to apply the reopening limitations independently of the asylum statute so that they govern an alien such as Chen under a final order of removal. *See id.*

The plain language of the statute further supports this approach because the changed conditions exception for asylum applications is permissive on its face: "An application for asylum of an alien *may* be considered . . . ." 8 U.S.C. § 1158(a)(2)(D) (emphasis added); *see United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). The BIA's interpretation of the statute takes Congress at its word, that it may consider such applications but need not do so in every case. The BIA has struck a balance between considering such applications and maintaining procedural rules that ensure the interest in adjudicative finality. Its interpretation harmonizes the competing exceptions. Its interpretation of the statutes and regulations is reasonable, and its decision is not arbitrary, capricious, or contrary to law.

We acknowledge language in a handful of decisions suggesting that aliens in Chen's position may seek asylum without a motion to reopen. *See He v. Gonzales*, 501 F.3d 1128, 1133 n.9 (9th Cir. 2007); *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 273 (2d Cir. 2007) (Calabresi, J., concurring); *Haddad v. Gonzales*, 437 F.3d 515, 518-19 (6th Cir. 2006); *Guan v. BIA*, 345 F.3d 47, 49 (2d Cir. 2003) (per curiam). In *He*, after holding that changed personal circumstances would not support a successive and untimely motion to reopen removal pro-

ceedings, we stated in a footnote that the Hes could nevertheless file an application for asylum apart from the removal proceedings under the asylum statute. *See He*, 501 F.3d at 1133 n.9. We acknowledged, however, that the issue was not before us. *Id.* Because the interplay between the two statutory provisions was not "presented for review" in *He*, we are not bound by *He*'s offhand observation. *See Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam). Similarly, the Second and Sixth Circuits made their suggestions in dicta. In deferring here to the BIA's statutory interpretation, we reject these dicta.

Two other circuits have published opinions squarely addressing the question presented here, and both reach the conclusion that the BIA reached in *In re C-W-L-*. *See Cheng Chen*, 498 F.3d at 760-61; *Zheng v. Mukasey*, 509 F.3d 869, 872 (8th Cir. 2007). "Deference is especially appropriate in the context of immigration law, where national uniformity is paramount." *Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006). National uniformity in the immigration context also counsels deference where, as here, a failure to defer would cause a split of authority among the circuits.

**[5]** Chen's final contention is that her removal will violate "the U.N. Protocol Relating to the Status of Refugees, the Convention Against Torture, and [her] Due Process rights." She has not established her right to any relief that may be available under any of these provisions, however, and she has failed to show how any of them is violated by the application of reasonable procedural requirements for the adjudication of her claims. *See Foroglou v. Reno*, 241 F.3d 111, 113 (1st Cir. 2001) (rejecting claim that Convention Against Torture overcomes time limits for assertion of claims in deportation proceedings); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (stating that "the State certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule").

## CONCLUSION

The BIA's interpretation of §§ 1158(a)(2)(D) and 1229a(c)(7), and their implementing regulations, in *In re C-W-L-* was reasonable, and we defer to it in accord with *Chevron*, 467 U.S. at 842-45. Applying the same interpretation to Chen, who is subject to a final order of removal, the BIA properly concluded that Chen could apply for asylum only in connection with a motion to reopen, subject to the time and number limitations of § 1229a(c)(7). Because Chen exceeded those limitations and did not claim to qualify for the country conditions exception to them, her motion was properly denied. Chen's remaining contentions are without merit.

**PETITION FOR REVIEW DENIED.**