**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| RUBEN ADOLFO CERON, aka Ruben Ceron-Casco, <br><br> *Petitioner*, <br><br> v. <br><br> ERIC H. HOLDER, JR., Attorney General, <br><br> *Respondent*. | No. 08-70836 <br><br> Agency No. A073-969-493 <br><br><br> OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 8, 2012—Pasadena, California

Filed April 2, 2013

Before: Myron H. Bright,[*] Susan P. Graber,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Ikuta

---

[*] The Honorable Myron H. Bright, Senior Circuit Judge for the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Ruben Adolfo Ceron's petition for review of the Board of Immigration Appeals' decision finding that his conviction for assault with a deadly weapon, in violation of California Penal Code § 245(a)(1), constituted a crime involving moral turpitude ("CIMT") for which a sentence of at least one year's imprisonment could have been imposed.

The panel held that this court's holding in *Gonzales v. Barber*, 207 F.2d 398 (9th Cir. 1953), *aff'd on other grounds*, 347 U.S. 637 (1954), that an earlier but substantially similar version of CPC § 245 is a categorical CIMT, remains good law. The panel also held that Ceron's conviction is a felony, because although the offense is a wobbler, the minute order designated it as a felony and CPC § 17(b) did not apply to automatically convert it into a misdemeanor since the state court suspended imposition of sentence and ordered probation instead.

Dissenting, Judge Ikuta would hold that the majority lacks authority not to follow the en banc opinion in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011), and multiple rulings by this court, which established that assault with a deadly weapon is not a CIMT. Judge Ikuta wrote that the majority erred in holding

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that statements in a prior opinion are not binding if the majority decides that the statements relate to an issue that was not presented for review. Judge Ikuta also wrote that the majority further erred in holding that this court can ignore or overrule a statement in an en banc opinion if it relies on precedent that is not directly on point.

## COUNSEL

Mario Acosta, Jr., Martinez Goldsby & Associates, PLC, Los Angeles, California, for Petitioner.

Joseph A. O'Connell, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

## OPINION

GRABER, Circuit Judge:

Petitioner Ruben Adolfo Ceron pleaded nolo contendere in California state court to assault with a deadly weapon, in violation of California Penal Code section 245(a)(1). The state court sentenced Petitioner to 364 days to be served in county jail, but it suspended that sentence and imposed probation instead. The Board of Immigration Appeals ("BIA") held that Petitioner was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(i) for having committed a crime involving moral turpitude for which a sentence of at least one year's imprisonment could have been imposed. Reviewing questions of law de novo, *Blanco v. Mukasey*, 518 F.3d 714, 718 (9th Cir. 2008), we deny the petition for review.

First, California Penal Code section 245(a)(1) is categorically a "crime involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(i)(I). We held long ago that assault with a deadly weapon under California Penal Code section 245 is a crime involving moral turpitude. *Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953) (construing an earlier, but substantially similar version of section 245), *aff'd on other grounds*, 347 U.S. 637 (1954). That decision accorded with a long-standing BIA interpretation. *In re G- R-*, 2 I. & N. Dec. 733 (B.I.A. 1946); *see also In re Sanudo*, 23 I. & N. Dec. 968, 971 (B.I.A. 2006) (reaffirming that "assault and battery with a deadly weapon has long been deemed a crime involving moral turpitude by both this Board and the Federal courts" (citing *Barber*, 207 F.2d at 400)).

In *Carr v. INS*, 86 F.3d 949, 951 (9th Cir. 1996), we wrote that California Penal Code section 245(a)(2), assault with a firearm, "is not a crime of moral turpitude." We leave for another day the government's argument that *Carr*'s statement is dictum. *See Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir. 2005) (en banc) (per curiam) (defining dictum). Even assuming that *Carr*'s statement is a holding, it has no effect here: *Carr* concerned California Penal Code section 245(a)**(2)**, assault with a *firearm*, whereas here we deal with California Penal Code section 245(a)**(1)**, assault with a *deadly weapon*. Nothing in *Carr* suggests that it intended to overrule *Barber*. Nor could *Carr* have overruled *Barber* in the absence of an intervening change in law. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en

banc) (describing the limits of a three-judge panel's authority).[1]

In later cases, we have cited *Carr*'s statement in passing. Complicating matters, although *Carr* plainly concerned assault with a *firearm*, some of our later cases have mischaracterized *Carr*'s holding as concerning assault with a *deadly weapon*. *See Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013) ("'Indeed, we have determined, for example, that . . . assault with a deadly weapon, [*Carr*, 86 F.3d at 951,] do[es] not involve moral turpitude.'" (citation omitted) (quoting *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1074–75 (9th Cir. 2007) (en banc) (Reinhardt, J., concurring for the majority))); *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012) (same); *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1018 n.6 (9th Cir. 2008) ("[A]ssault with a deadly weapon does not constitute [a crime involving moral turpitude]." (citing *Carr*, 86 F.3d at 950–51)); *Marmolejo-Campos v. Gonzales*, 503 F.3d 922, 927 (9th Cir. 2007) (Nelson, D.W., J., dissenting) ("[A]ssault with a deadly weapon [and other crimes] have all been found *not* to involve moral turpitude." (citing *Carr* with the parenthetical "assault with a deadly weapon")). Those erroneous passing descriptions of *Carr*'s statement are dicta; they cannot and do not overrule *Barber*. *Barapind*, 400 F.3d at 750–51; *see Ruff v. Sullivan*, 907 F.2d 915, 918 (9th Cir. 1990) ("This panel is not bound by dicta from prior cases

---

[1] *Carr* did not mention *Barber*, and it contains very little reasoning. Indeed, the only reasoning in *Carr* is a citation to two cases and corresponding parentheticals. In our view, the cases and parentheticals do not support *Carr*'s conclusion. Nor does logic. As a three-judge panel, however, we cannot overrule *Carr* in the absence of certain circumstances. *Miller*, 335 F.3d at 899–900. We need not decide whether those circumstances are present here, for the reasons described in text.

. . . ." (internal quotation marks omitted)). The issue whether assault with a deadly weapon under California Penal Code section 245(a)(1) is a crime involving moral turpitude plainly was not an "issue presented for review." *Barapind*, 400 F.3d at 750. Neither *Carr* nor our later cases purported to consider—let alone overrule—our decision in *Barber*. *Barber* remains good law.[2]

Nor are we persuaded by Petitioner's arguments concerning mens rea and the extent of the injury. Under California law, "[a]ssault is . . . a general intent crime . . . [and] mere recklessness or criminal negligence is . . . not

---

[2] The dissent argues that, because we mischaracterized *Carr*'s holding in a later case, we are bound by that plain mischaracterization. We disagree for two reasons. First, as we noted in text, the issue whether assault with a deadly weapon is a crime involving moral turpitude was not "presented for review" in any of the later cases. *Barapind*, 400 F.3d at 750. That fact fatally undermines the dissent's argument that we are bound by the later cases' misstatements. *See, e.g.*, *Chen v. Mukasey*, 524 F.3d 1028, 1033 (9th Cir. 2008) ("Because the interplay between the two statutory provisions was not 'presented for review' in *He*, we are not bound by *He*'s offhand observation." (quoting *Barapind*, 400 F.3d at 750)); *United States v. Macias-Valencia*, 510 F.3d 1012, 1015 (9th Cir. 2007) ("In neither case, then, was the issue we face today 'presented for review' and decided. Accordingly, we are free to decide the issue without referring it to the court en banc." (quoting *Barapind*, 400 F.3d at 750)). The dissent never addresses that key point.

Second, common sense dictates that a plain misstatement by one panel cannot bind future panels. Suppose we hold in "*Smith*" that section 12 of a statute is unconstitutional. If we later accidentally invert the digits and mischaracterize our holding in "*Smith*" as declaring section 21 of the statute unconstitutional, that mischaracterization certainly would not bind us with respect to the constitutionality of section 21. The *mere description* of the holding of an earlier case is not, itself, a holding—at a minimum where, as here, the description is plainly erroneous and the issue plainly was not considered by the later cases.

enough" to sustain a conviction. *People v. Williams*, 29 P.3d 197, 203 (Cal. 2001) (citations omitted). Moreover, Petitioner glosses over the fact that section 245(a)(1) does not concern *simple* assault; it prohibits assault *with a deadly weapon*. As the BIA has recognized, that fact is an "aggravating factor." *In re Solon*, 24 I. & N. Dec. 239, 245 (B.I.A. 2007). "Although as a general rule, a simple assault and battery offense does not involve moral turpitude, an aggravating factor can alter our determination." *In re Sejas*, 24 I. & N. Dec. 236, 237 (B.I.A. 2007); *see Solon*, 24 I. & N. Dec. at 245 ("[T]he presence of an aggravating factor can be important in determining whether a particular assault amounts to a crime involving moral turpitude."). "The 'aggravating dimensions' recognized as sufficiently increasing the culpability of an assault to turn an assault into a [crime involving moral turpitude] have been the use of a deadly weapon . . . ." *Uppal v. Holder*, 605 F.3d 712, 717 (9th Cir. 2010) (citing *In re Medina*, 15 I. & N. Dec. 611 (B.I.A. 1976)); *In re Sanudo*, 23 I. & N. Dec. at 971 (reaffirming that "assault and battery with a deadly weapon has long been deemed a crime involving moral turpitude by both this Board and the Federal courts" (citing *Barber*, 207 F.2d at 400)).

In sum, we conclude that our holding in *Barber*—that assault with a deadly weapon under California Penal Code section 245(a)(1) is a crime involving moral turpitude—remains good law.

Second, Petitioner's conviction under California Penal Code section 245(a)(1) is a conviction for a "crime for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i)(II). A person convicted of violating section 245(a)(1) "shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for

not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

At first glance, it seems clear that Petitioner committed a crime for which a sentence of one year or longer could have been imposed. Indeed, under the statutory text, he could have received up to four years in state prison. But we have rejected that analysis, for reasons that require some explanation.

In California, "[a] felony is a crime that is punishable with death, by imprisonment in the state prison, or . . . by imprisonment in a county jail under the provisions of subdivision (h) of Section 1170." Cal. Penal Code § 17(a). "Every other crime . . . is a misdemeanor . . . ." *Id.* Some crimes, however, are punishable by *both* felony-type punishments and non-felony-type punishments—for example, by imprisonment in state prison (felony-type punishment) and by imprisonment in county jail (non-felony-type punishment). Those crimes are known as "wobblers." *See generally Ewing v. California*, 538 U.S. 11, 16–17 (2003) (describing "wobblers").

For wobblers, California Penal Code section 17(b) describes a number of circumstances in which the wobbler "is a misdemeanor for all purposes." Relevant here, that section states:

> When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or

imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:

   (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170.

   . . . .

   (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.

Cal. Penal Code § 17(b).

In *Garcia-Lopez v. Ashcroft*, 334 F.3d 840, 842 (9th Cir. 2003), the petitioner had pleaded guilty to having violated California Penal Code section 487.2 (1992). That crime "is punishable by 'imprisonment in a county jail not exceeding one year *or* in the state prison.'" *Id.* at 844 (quoting Cal. Penal Code § 489(b) (1992)). The state court had suspended the proceedings and ordered the petitioner to serve probation. *Id.* at 842. The state court later designated the petitioner's offense a misdemeanor and dismissed the charges. *Id.*

The relevant federal question in *Garcia-Lopez* was whether the "maximum penalty possible" *exceeded* one year. *Id.* at 843. We began our analysis by recognizing that section

487.2 is a "wobbler" under California law. *Id.* at 844. We next looked to California Penal Code section 17(b)'s list of circumstances in which a wobbler is considered a misdemeanor "for all purposes." *Id.* We held that, because the court suspended the sentence and imposed only probation, section 17(b)(1) did not apply. *Id.* at 844–45. But we then held that, because the court declared the offense to be a misdemeanor, section 17(b)(3) *did apply*, and the petitioner's conviction was a "misdemeanor for all purposes." *Id.* at 845–46.

At that point in the analysis, we could have concluded that the maximum penalty possible was one year, because the applicable statutory section specified that imprisonment in county jail (the non-felony-type punishment) was limited to one year. Because the federal inquiry was whether the maximum penalty *exceeded* one year, the analysis would have been complete. In a step that had no consequence to that case, but that has much consequence to this one, we wrote: "Because the offense of which he was convicted was a misdemeanor, Garcia-Lopez's maximum possible penalty under California law was less than six months. *See* Cal. Penal Code § 19 (West 1992)." *Garcia-Lopez*, 334 F.3d at 846.

In *Ferreira v. Ashcroft*, 382 F.3d 1045, 1048 (9th Cir. 2004), the petitioner had pleaded guilty to violating California Health & Safety Code section 11377(a) (1998). "The statute provided that offenders 'shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison.'" *Id.* (quoting Cal. Health & Safety Code § 11377(a) (1998)). The state court had sentenced the petitioner to four months in the county jail. *Id.*

The relevant federal question in that case, as in *Garcia-Lopez*, was whether the maximum possible penalty *exceeded* one year. *Ferreira*, 382 F.3d at 1049–50. We held that, although the criminal statute was a wobbler, "[o]nce the state court sentenced [the petitioner] to a county jail term rather than a term in the state prison, the offense automatically converted from a felony into a misdemeanor for all purposes." *Id.* at 1051 (citing Cal. Penal Code § 17(b)(1) and *Garcia-Lopez*, 334 F.3d at 844). Then, as in *Garcia-Lopez*, we took the unnecessary final step of holding that, "[u]nder California law, the maximum penalty for a misdemeanor is six months' imprisonment, and [the petitioner's] offense is therefore not an aggravated felony." *Id.* (citing *Garcia-Lopez*, 334 F.3d at 846, with the parenthetical: "holding with regard to a 'wobbler' offense that '[b]ecause the offense of which he was convicted was a misdemeanor, Garcia-Lopez's maximum possible penalty under California law was less than six months'" (alteration in original)).

In our view, we erred in *Garcia-Lopez* and *Ferreira* in that final analytical step. California Penal Code section 19 provides:

> *Except in cases where a different punishment is prescribed by any law of this state*, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or by both.

(Emphasis added.) As its text plainly states, the provision applies only when a statute is designated a "misdemeanor" without further description of the possible penalties. *See,*

*e.g.*, Cal. Penal Code § 372 ("Every person who maintains or commits a public nuisance . . . is guilty of a misdemeanor."); *id.* § 374c ("Every person who shoots any firearm from or upon a public road or highway is guilty of a misdemeanor."). Where a criminal statute specifies a range of punishment, however, that range controls and section 19 does not apply. *See, e.g.*, *In re Jennings*, 95 P.3d 906, 917–18 (Cal. 2004) (explaining that, "[i]n general, punishment for a misdemeanor cannot exceed confinement in a county jail for up to six months [pursuant to section 19]" but that a "violation of section 25658(c) [(2004)], though not a felony, provides for a punishment greater than that prescribed for the typical misdemeanor because a violator 'shall be punished [for amounts differing from section 19]'"). Because the relevant criminal statutes at issue in *Garcia-Lopez* and *Ferreira* gave specific punishments, we erred in looking to section 19's general range.

Although that analytical step had no legal consequence in those cases, it does have legal consequence here. The federal inquiry here is whether the state statute permitted imprisonment of *at least one year*. 8 U.S.C. § 1227(a)(2)(A)(i)(II). California Penal Code section 245(a)(1) specifies punishment of "imprisonment in the state prison for two, three, or four years, or in a county jail for *not exceeding one year*, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment." (Emphasis added.) Even assuming that Petitioner's crime was a misdemeanor, the statute permits imprisonment "in a county jail for not exceeding one year." *Id.* Because the statute permits imprisonment for one year, the one-year requirement under 8 U.S.C. § 1227(a)(2)(A)(i)(II) is met even if Petitioner's crime was a misdemeanor.

Nevertheless, *Garcia-Lopez* and *Ferreira* held, in circumstances indistinguishable from these, that section 19 applies. Accordingly, we must follow those cases and analyze whether Petitioner's crime was a misdemeanor or a felony. *Barapind*, 400 F.3d at 750–51; *Gammie*, 335 F.3d at 899–900.

The minute order here designated Petitioner's conviction as a felony. That fact is not necessarily conclusive, however. *Ferreira*, 382 F.3d at 1051 n.3. If section 17(b) applies, the conviction "is automatically converted for all purposes into a misdemeanor." *Id.*

Unfortunately for Petitioner, section 17(b) does not apply. Section 17(b)(1) does not apply because the state court suspended the imposition of the sentence and ordered probation instead, just as in *Garcia-Lopez*. *See Garcia-Lopez*, 334 F.3d at 844 (holding, in circumstances indistinguishable from Petitioner's here, that "because Garcia-Lopez was never subject to a judgment imposing punishment, § 17(b)(1) is inapplicable to his case"). Nor does section 17(b)(3) apply. Unlike in *Garcia-Lopez*, the state court never declared Petitioner's offense to be a misdemeanor. *Id.* at 845.

Because section 17(b) does not apply and because the minute order designated Petitioner's conviction as a felony, we hold that Petitioner's conviction was a felony. *See United States v. Robinson*, 967 F.2d 287, 293 (9th Cir. 1992) (holding, in circumstances identical to Petitioner's here, that "the requirements of § 17(b)(1) and (3) of the California Penal Code were not met" and, accordingly, the conviction was a felony), *recognized as overruled in other part by Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1019–20 (9th

Cir. 2006). The felony sentencing provisions of section 245(a)(1) allow for imprisonment of more than one year. Accordingly, Petitioner's conviction under California Penal Code section 245(a)(1) is a conviction for a "crime for which a sentence of one year or longer may be imposed." 8 U.S.C. § 1227(a)(2)(A)(i)(II).

**Petition DENIED.**

IKUTA, Circuit Judge, dissenting:

Today, the majority adopts an idiosyncratic approach to precedent to avoid following one of our en banc decisions. Although an en banc panel stated that "assault with a deadly weapon" is not a crime involving moral turpitude, *see Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1073 (9th Cir. 2007), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), and although this statement has been followed by subsequent panels, *see*, *e.g.*, *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012), *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013), the majority decides it is not bound by this precedent because *Navarro-Lopez* was mistaken in the way it reached this conclusion. Because we are not free to cast off precedent, however mistaken, unless we correct it through en banc rehearing, *see United States v. Parker*, 651 F.3d 1180, 1184 (9th Cir. 2011); *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001), I respectfully dissent.

**I**

Ruben Ceron was convicted of assault with a deadly weapon in violation of California Penal Code section 245(a)(1). The question before us is whether this crime categorically involves moral turpitude.

**A**

We established our analytical approach to this question in *Navarro-Lopez*. In that case, we considered whether a conviction for accessory after the fact was a crime involving moral turpitude. *See Navarro-Lopez*, 503 F.3d at 1067. In analyzing this issue, we first derived the generic definition of the term, stating that "a crime involving moral turpitude is a crime involving conduct that (1) is base, vile, or depraved, and (2) violates accepted moral standards." *Id.* at 1068. Despite the breadth of this definition, we warned that it was not limitless, because "at some level all illegal acts violate societal norms and values—that is why the acts are illegal." *Id.* at 1072 n.9. Rather, we explained, "'crimes involving moral turpitude' is a limited category of crimes and does not extend to cover all conduct that violates the law." *Id.* In order to determine whether "accessory after the fact" fell into this limited category, we compared it to other crimes not deemed to be morally turpitudinous. *See id.* at 1072–73. Because "neither burglary nor assault with a deadly weapon constitute crimes of moral turpitude," and because one could be an accessory to such non-turpitudinous conduct, we concluded that acting as an accessory after the fact could not categorically constitute a "crime involving moral turpitude." *Id.* at 1073.

The concurrence (which is precedential, because it was joined by seven other judges) agreed that accessory after the fact was not a crime of moral turpitude, and echoed the majority's concern about defining crimes of moral turpitude too expansively.[1]  *See id*. at 1075.  The concurrence then echoed the majority's reasoning that in order to identify what sort of conduct "offend[s] the most fundamental moral values of society" a comparative approach must be used: namely, we must "compare a crime's depravity with that of crimes we have previously determined to be base, vile and depraved—crimes such as murder, rape, and incest."  *Id*. at 1074–75.  It likewise noted that assault with a deadly weapon was not a crime involving moral turpitude.  *Id*. at 1074.

Throughout the en banc panel's effort to delimit the boundaries of crimes involving moral turpitude, the majority and the concurrence stated three times that the offense of assault with a deadly weapon is not a crime involving moral turpitude.  *See, e.g.*, *id*. at 1072 ("No court has ever found possession of a weapon to be a crime involving moral turpitude.  *Cf. Carr*, 86 F.3d at 950–51 (holding that assault with a deadly weapon was not a crime involving moral turpitude)"); *id*. at 1073 ("We have held that neither burglary nor assault with a deadly weapon constitute crimes of moral turpitude."); *id*. at 1075 (Reinhardt, J., concurring) ("There are other offenses that are so base, vile, and depraved that they qualify as crimes of moral turpitude . . . .  Not all serious

---

[1] The concurrence disagreed with the portion of the majority's opinion which held that crimes involving fraud were not a "per se category of crimes involving moral turpitude." *Id*. at 1074 (Reinhardt, J., concurring). The precedential concurrence held instead that under longstanding case law, crimes involving fraud should be analyzed as a separate category of crimes involving moral turpitude rather than acts that are "base, vile, or depraved." *Id*.

crimes meet this standard, however. Indeed, we have determined, for example, that burglary . . . and assault with a deadly weapon . . . do not involve moral turpitude.") (internal citation omitted).

Our categorization of assault with a deadly weapon as a non-turpitudinous offense was a significant part of the en banc panel's analysis and was necessary to the ultimate holding of *Navarro-Lopez*. Accordingly, we are bound by this statement absent "intervening higher authority" that "effectively overrule[s]" it, *see Miller v. Gammie*, 335 F.3d 889, 892–83 (9th Cir. 2003) (en banc), and indeed, subsequent panels have continued to cite to *Navarro-Lopez* as an authoritative statement that assault with a deadly weapon is not a crime involving moral turpitude. *See, e.g.*, *Robles-Urrea*, 678 F.3d at 708; *Castrijon-Garcia*, 704 F.3d at 1212. Moreover, when we sit en banc and act in our supervisory role, our statements are binding whether or not they are technically necessary to our holdings. *See Barapind v. Enomoto*, 400 F.3d 744, 751 n.8 (9th Cir. 2005) (en banc) (stating that "[o]ur [en banc] opinion provides a supervisory function" by instructing three-judge panels and district courts about "how to determine what law is binding on them."). This logic applies equally to our categorization of different offenses in *Navarro-Lopez*.

## B

Contrary to our longstanding rules about binding precedent, however, the majority concludes that we are not bound by *Navarro-Lopez*'s categorization of assault with a deadly weapon because *Navarro-Lopez* cites to *Carr v. INS*, 86 F.3d 949 (9th Cir. 1996), which held that assault with a *firearm* was not a crime involving moral turpitude, but did

not mention whether assault with any other deadly weapon was likewise non-turpitudinous. *See* maj. op. at 4–6.

I disagree with both of the majority's reasons for sweeping aside our precedent. *See* maj. op. at 6 n.2. First, the majority errs in holding that statements in a prior opinion are not binding if the majority decides that those statements relate to an issue that was not "presented for review." *Id*. Because a subsequent panel can define the issues "presented for review" as broadly or narrowly as it chooses, this "test" threatens to swallow our rule regarding binding precedent. *See, e.g.*, *Oshodi v. Holder*, 671 F.3d 1002, 1008 n.4 (9th Cir. 2012) (rejecting an interpretation of the REAL ID Act in *Ren v. Holder*, 648 F.3d 1079 (9th Cir. 2011), because "that issue was not 'presented for review' to the *Ren* panel," and therefore its interpretation "is dicta and need not be considered here."), *reh'g en banc granted*, 678 F.3d 776 (9th Cir. 2012) (internal citations omitted). Here, the *Navarro-Lopez* en banc panel determined that the resolution of the question whether "accessory after the fact" constituted a "crime involving moral turpitude" required it to review and categorize the crimes that fell inside and outside this category and assault with a deadly weapon was among the crimes it reviewed. *See Navarro-Lopez*, 503 F.3d at 1072–73. The en banc court's analysis of this legal issue cannot now be brushed aside on the ground that the parties did not specifically ask the en banc court to conduct such a review.[2]

---

[2] The majority relies on *Chen v. Mukasey*, 524 F.3d 1028 (9th Cir. 2008) and *United States v. Macias-Valencia*, 510 F.3d 1012 (9th Cir. 2007) for the principle that a subsequent panel is not bound by statements in prior decisions relating to an issue that had not been "presented for review," but neither case supports that principle. In both cases, the prior decision in question had acknowledged that its passing remarks were not precedential. *See Chen*, 524 F.3d at 1033 ("We acknowledged, however, that [our

Second, the majority errs in holding that we can ignore or overrule a statement in one of our en banc opinions if it relies on precedent that is not directly on point. If this were true, untold numbers of our rulings would be deemed non-precedential. Here, *Navarro-Lopez* applied the holding in *Carr* (that assault with a firearm was not a crime involving moral turpitude) to assault with other deadly weapons. *See id.* at 1072–73. Contrary to the majority's argument, this is a reasonable extension of our precedent, not a "plain misstatement" akin to an inadvertent transposition of two numbers. *See* maj. op. at 6 n.2.

Moreover, even if *Navarro-Lopez* had made a mistake in interpreting *Carr*, a three-judge panel could not overrule such an error; "[o]nly the en banc court" can correct such mistakes. *See Parker*, 651 F.3d at 1184.[3]  Indeed, we expressly rejected

---

observation in *He v. Gonzales*, 501 F.3d 1128 (9th Cir. 2007) about the potential relief available to the petitioners] was not before us."); *see also Macias-Valencia*, 510 F.3d at 1015 (holding that "our use of the subjunctive" in mentioning an argument in passing "suggests that we knew that we were not addressing, and that we could not address" that argument). Here, the *Navarro-Lopez* en banc panel repeatedly asserted that assault with a deadly weapon is not a crime involving moral turpitude, and nowhere suggested that this categorization was a non-precedential offhand remark.

[3] Thus, it does not matter that an earlier three-judge panel held that assault with a deadly weapon is a crime involving moral turpitude. *See* maj. op. at 4 (citing *Gonzales v. Barber*, 207 F.2d 398, 400 (9th Cir. 1953)). An en banc decision overrules all prior precedent. *See Gammie*, 335 F.3d at 892–93. Even if there were a conflict between *Barber* and *Navarro-Lopez* or our subsequent case law, a three-judge panel cannot resolve the conflict by ignoring the later precedent. Rather, "the appropriate mechanism for resolving an irreconcilable conflict is an en banc decision." *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc).

the majority's approach in *United States v. Contreras* (*Contreras II*), 593 F.3d 1135, 1136 (9th Cir. 2010) (en banc). In that case, it was clear that one of our opinions, *United States v. Hill*, 915 F.2d 502 (9th Cir. 1990), had been overruled by the 1993 amendments to the Sentencing Guidelines. *See United States v. Contreras* (*Contreras I*), 581 F.3d 1163, 1166 (9th Cir. 2009). But several intervening Ninth Circuit cases continued to cite to *Hill* erroneously after the 1993 amendments. *See id.* at 1167. Because this was error, the *Contreras I* panel said that it was not bound by those intervening cases, and ruled that it was instead bound to follow the Guidelines. *See id.* at 1168–69. We took the case en banc to clarify that this method of overruling cases is wrong. *See Contreras II*, 593 F.3d at 1136. On en banc rehearing, we affirmed the substance of the three-judge panel's opinion, but vacated the panel's analysis concerning its ability to overrule *Hill* and later cases. *See id.* In stating that we are not bound to follow three-judge panels citing to *Carr* because their decisions have misinterpreted it, *see* maj. op. at 5–6, the majority commits a similar error.[4]

In sum, the majority lacks the authority to sweep aside multiple Ninth Circuit rulings, including an en banc opinion, and insist on the ruling it prefers. *See Barapind*, 400 F.3d at 750–51 & n.8. Because our en banc panel established that

---

[4] Curiously, the majority eschews this approach in the second part of its opinion, where it acknowledges that we are bound by *Garcia-Lopez v. Ashcroft*, 334 F.3d 840 (9th Cir. 2003) and *Ferreira v. Ashcroft*, 382 F.3d 1045 (9th Cir. 2004) despite their obviously erroneous interpretation of California law. *See* maj. op. at 13 ("Nevertheless, *Garcia-Lopez* and *Ferreira* held, in circumstances indistinguishable from these, that section 19 applies. Accordingly, we must follow those cases and analyze whether [Ceron's] crime was a misdemeanor or a felony. *Barapind*, 400 F.3d at 750–51; *Gammie*, 335 F.3d at 899–900.").

assault with a deadly weapon is not a crime involving moral turpitude, I dissent.